[No. 1133.]

## THE STATE OF NEVADA, RESPONDENT, *v.* GEORGE DAUGHERTY, APPELLANT.

ASSAULT WITH INTENT TO KILL—DECLARATIONS OF PARTY ASSAULTED—WHEN NOT ADMISSIBLE—RES GESTÆ.—Defendant was tried for an assault with intent to kill one J. B. Davis. Davis was not present at the trial. The prosecution was allowed to prove the declarations made by Davis, a few minutes after the difficulty, to persons who were present, to the effect that defendant made the assault: *Held,* error; that the declarations were not admissible in evidence as part of the *res gestæ.*

IDEM—PAST TRANSACTION.—The principal fact in this case was the assault. The declarations of Davis were no part of that. They were simply a statement of what was done at the time of the commission of the offense, and were no part of the *res gestæ.* The evidence was the narration of a past occurrence, and was incompetent.

APPEAL from the District Court of the Fourth Judicial District, Humboldt County.

The facts are stated in the opinion.

*J. H. Windle,* for Appellant:

I. The district court erred in admitting the statements and

declarations of Davis, the party alleged to have been assaulted. These statements and declarations are shown to have been made some time after the termination of the acts to which they refer, and after the defendant had been arrested and all action on his part ceased, and in his absence, and were merely narrative of a past transaction, and were merely hearsay and incompetent.    (*People* v. *Ah Lee et al.*, 9 Pac. L. J. 390; Wharton Crim. Ev., sec. 263, note; 1 Green. Ev., sec. 110; 1 Taylor Ev. 53; *State* v. *Field*, 34 Am. Rep. 476; *Hamilton* v. *State*, 10 Am. Rep. 22; *State* v. *Forrest*, 21 Ohio St. 641.)

*M. A. Murphy*, Attorney-General, for Respondent:

The declarations made by Davis were admissible.    Being made immediately after the assault had been made by Daugherty upon Davis, they were part of the *res gestœ*.    (*State* v. *Ah Loi*, 5 Nev. 100; *State* v. *Ferguson*, 9 Nev. 119.)

By the Court, BELKNAP, J.:

The defendant was charged with an assault with intent to kill one J. B. Davis.

The arresting officer testified to the circumstances under which the arrest was made, and stated that after he had delivered the prisoner into the custody of the sheriff, he went to the scene of the assault.

He said: "Two or three minutes after the shot was fired I arrested defendant; in about two minutes more I handed him over to the sheriff; a minute after I saw Mr. MacMillan, and he and I went down to Bell's saloon.    At most we were not more than three or four minutes going to the saloon.    We walked rather fast.    When we got there, there were in the saloon Bell, Ross, Davis and Barrett, and others.    The blood having been washed from Davis' face, MacMillan put on some court-plaster and dressed his wounds."

The witness was then asked: "At that time, and immediately on your arrival at the saloon, did you hear Davis make any statement about the difficulty?"

Objection being made to the question, the attorney for the state explained that it was asked for the purpose of adducing.

testimony showing "that Davis was then, almost immediately after the shooting, making declarations in regard to the matter of the assault, and the difficulty between him and defendant, and was making such declarations in the presence of the eye-witnesses to the assault; and that such declarations tend to show that defendant did make the assault charged, and that the declarations were made so soon after the shooting that they constitute a part of the transaction."

The court overruled the objection, and the witness was allowed to proceed as follows:

"I heard Davis then say to MacMillan that defendant had pulled out a pistol and struck him, without any cause, and he was going to prosecute him, if it took all the money he had. Davis said: Defendant got up, and then came back to the table and said: If you beat me you have no right to insult me, and came back and jerked out his pistol, and that he, Davis, had to, and did, grab him by the wrists, and that the pistol was then fired while he had defendant by the wrists. I have had an attachment for Davis, and telegraphed and searched for him everywhere, and can't find him."

It is argued that this testimony was admissible as part of the *res gestæ.*

In treating of the admissibility in evidence of declarations made in connection with the principal facts, Greenleaf says:

"The affairs of men consist of a complication of circumstances so intimately interwoven as to be hardly separable from each other. Each owes its birth to some preceding circumstance, and, in its turn, becomes the prolific parent of others, and each, during its existence, has its inseparable attributes and its kindred facts, materially affecting its character, and essential to be known in order to a right understanding of its nature. These surrounding circumstances, constituting parts of the *res gestæ,* may always be shown to the jury along with the principal fact, and their admissibility is determined by the judge, according to the degree of their relation to that fact and in the exercise of his sound discretion; it being extremely difficult, if not impossible, to bring this class of cases within the limits of a more particular description. The principal points of attention are whether the circumstances

and declarations offered in proof were contemporaneous with the main fact under consideration, and whether they were so connected with it as to illustrate its character." (1 Greenl. Ev. sec. 108.)

In *Rawson* v. *Haigh*, 2 Bing. 103, the question was whether an act of bankruptcy had been committed by the departure of the debtor from the realm with intent to delay or defraud his creditors. The testimony by which the act was to be proven were letters written by him while abroad.

Best, C. J., said: "The declaration, in order to be admissible, must be made or the letters written at the time of the act in question, but it is sufficient if they are written at any time during the continuance of the act; the departing the realm is a continuing act, and these letters were written during its continuance." In the same case Baron Park said:

"It is impossible to tie down to time the rule as to the declarations; we must judge from all the circumstances of the case; we need not go to the length of saying that a declaration made a month after the fact, would of itself be admissible, but if, as in the present case, there are connecting circumstances, it may, even at that time, form part of the whole *res gestæ.*"

The general rule is that declarations, to become part of the *res gestæ*, must accompany the acts which they are supposed to characterize, and so harmonize with them as to constitute one transaction. (*Enos* v. *Tuttle*, 3 Conn. 250.)

They are admissible as incident to the principal act, and because they are part of it, and are necessary to explain its true character. (*Ins. Co.* v. *Mosely*, 8 Wall. 412.)

The principal fact in this case was the assault. The declarations of Davis were no part of that. They were simply a statement of what was done at the time of the commission of the offense, and were, therefore, no part of the *res gestæ.*

The evidence was the narration of a past occurrence, and was incompetent.

The judgment and order of the district court denying defendant's motion for a new trial are reversed and cause remanded.