THEILEN, Respondent, vs. RATH, Appellant.

*September 4 — October 20, 1891.*

*Sale of chattels: Acceptance: Estoppel: Statute of frauds.*

1. The vendee of staves having taken the stipulated quantity from the vendor's piles, and never having returned or offered to return any part of them, cannot afterwards be heard to say that a portion of those taken were culls and did not apply on the contract.

2. In replevin for a quantity of staves, both parties claimed to have purchased from the same person. There being evidence tending to show that the defendant had purchased, by oral contract, all of the staves in the piles from which those in suit were taken, and that he had taken and shipped a part of the staves so purchased before the attempted sale by his vendor to the plaintiff, it is *held* that the questions whether such oral sale to the defendant had been made, and, if so, whether there had been such an acceptance by him of a part of the staves as took the contract out of the statute of frauds (R. S. sec. 2308), should have been submitted to the jury.

APPEAL from the Circuit Court for *Clark* County.

Replevin to recover possession of 4,434 half-barrel staves, 822 pieces of half-barrel heading, and 2,869 quarter-barrel staves, taken and detained by defendant in two freight-cars at the railroad depot in Greenwood, Clark county. Both parties claimed the title to the disputed property by purchase from Stafford Bros., who made the staves. They had been made during the winter of 1890–91, and hauled to the depot grounds, and there piled. Plaintiff proved that he purchased them of the Staffords March 14, 1891, and that he commenced loading them at once on cars. The defendant stopped him from further loading on the 24th of March, and the station agent forbade shipment; hence the plaintiff brought replevin. Defendant proved that he made a written contract with the Staffords November 1, 1890, for the manufacture and delivery of 100,000 staves, the material facts of which are as follows:

" Witnesseth, the said parties of the first part, for the

consideration hereinafter mentioned, has agreed and does hereby covenant, promise, and agree to make and deliver at the depot at Greenwood, Clark county, or at the next nearest depot in said county, one hundred thousand hardwood staves of the following dimensions: About thirty thousand whole-barrel staves, 32 inches long, average 5 inches wide, 1¾ inches thick; whole-barrel heading, 19 inches long, 10 inches wide, 1½ inches thick; thirty thousand half-barrel staves, 20 inches long, 1½ inches thick, average 4¼ inches wide; heading, 15 inches long, 8 inches wide, 1¼ inches thick; one-fourth barrel, 22 inches long, 1¼ inches thick, average 4 inches wide; double-eighth, 34 inches long, 1¼ inches thick, average 4 inches wide.

"The said party of the second part, in consideration thereof, agrees to pay said parties of the first part the following sums per thousand when said staves are delivered and accepted on board of cars: Twenty-seven dollars per thousand for the whole-barrel staves and heading, twenty-one dollars per thousand for half-barrel staves with heading, sixteen dollars per thousand for quarter-barrel, twenty-one dollars per thousand for double-eighths,— to be paid as follows: Six dollars per thousand at the ensealing and delivery of these presents, and seven dollars per thousand as the staves are made, and five hundred dollars when said staves are delivered at the depot; the balance of the amount to be paid when said staves are loaded on board of cars; said staves to be made from white oak timber."

There was evidence tending to show that *Rath* was at Staffords' camp in January, 1891, and that one of the Staffords suggested that they would get 125,000 staves off from the land which they were cutting, and perhaps more, and that *Rath* said: "The more the better. We will pay the same for whatever you cut off this land, whatever the contract says;" to which Stafford replied: "That was all right, and they would do it." The evidence also tended to

prove that on February 22, 1891, about 40,000 or 50,000 staves had been cut and piled on the depot grounds by the Staffords; that Stafford and *Rath* were at the depot grounds together on that day, and that Stafford pointed out the piles before mentioned to *Rath* as all his staves; that *Rath* afterwards loaded on cars and took away a considerable quantity of these very staves; that the staves which plaintiff claims to have bought in March, and which are the subject of this suit, were taken from the piles shown by Stafford to *Rath* in February. *Rath* admitted that he had received under the contract 40,671 quarter-barrel staves and heading, and 35,698 half-barrel staves, and 436 single staves; but claimed they were half culls. He claimed to have paid the Staffords more than the staves actually received by him would come to at the contract price.

At the close of the case the court directed a verdict for plaintiff, and the defendant appeals.

*James O'Neill*, for the appellant.

For the respondent there was a brief by *Sturdevant & Sturdevant*, attorneys, and *M. C. Ring*, of counsel, and oral argument by *J. R. Sturdevant*.

WINSLOW, J. Much space is consumed in the briefs in discussing the question as to when title to the staves passed under the written contract,— whether upon delivery at the depot grounds or upon loading on the cars. As we look at the evidence, this question is not necessary to be decided. The appellant, *Rath*, himself, testifies that he received and took away 40,671 quarter-barrel staves and 35,698 half-barrel staves under the contract. Reference to the contract shows that he could claim no more of either kind under it. The contract was filled as to these two kinds of staves, and we are not concerned with the whole-barrel staves, because the plaintiff claims only half and quarter-barrel staves. Defendant tries to escape from the result by claiming that

Theilen vs. Rath.

half were culls, but his testimony shows that he voluntarily took them, and never returned them or offered to return them. He is not now in a situation to say that they did not apply on the contract.

There was, however, testimony in the case tending to show that in January there was an oral arrangement made between *Rath* and the Staffords, by which *Rath* agreed to take and the Staffords to furnish about 25,000 staves outside the written contract, at the same price, provided they could be cut off from a specified piece of land. It is said by respondents that, even if this alleged arrangement be admitted, still it was within the statute of frauds, and void. But it was certainly not within the statute of frauds if a part of them had been actually received and accepted by *Rath* before the attempted sale to *Theilen*. The evidence, as printed, is somewhat confused, but it seems to us that there is evidence tending to show that part of the staves claimed to have been sold under this oral arrangement had been taken by *Rath* and shipped to Chicago before the sale to *Theilen* took place. If this be true, this would be a fact which would be evidence of acceptance, and which ought to be submitted to a jury, to decide whether in fact there had been such acceptance of a part of the property covered by the alleged oral sale as would take it out of the statute of frauds. As to what acts might constitute such acceptance, reference is made to the discussion of the subject by Mr. Justice Lyon in *Bacon v. Eccles*, 43 Wis. 227. If there was an acceptance on the part of *Rath* which would satisfy the statute and validate the oral contract, then by the same act *Rath* became possessed of the title, certainly, of those staves which were on the depot grounds and pointed out by Stafford on February 22d.

This view of the case necessitates a new trial to determine the questions (1) whether there was a parol contract of sale made in January; (2) whether the staves in question

were covered by such parol contract; and (3) whether there had been such an acceptance of a part of the staves covered by the parol contract as satisfied the statute of frauds and passed the title.

*By the Court.*— The judgment of the circuit court is reversed, and the case remanded for a new trial.

