(January 26, 1894.)

## COFFIN v. BRADBURY.

[35 Pac. 715.]

PRACTICE—ERROR AGAINST RESPONDENT.—On appeal by defendants the appellate court will not review errors alleged to have been committed against the respondents.

STATUTE OF FRAUDS—CONSTRUED.—When none of the things are done at the time the bargain is made required to be done and performed under the provisions of section 6009 of the Revised Statutes of 1887 to take a contract of sale out of its provisions the contract cannot be enforced against the purchaser unless he thereafter receives and accepts the property purchased. A receipt and acceptance takes the contract out of the provisions of said section.

EXECUTORY CONTRACTS.—Said section is applicable to executory contracts, and not executed ones.

CONFLICT OF EVIDENCE—VERDICT NOT DISTURBED.—When the questions of sale, delivery and acceptance were submitted to the jury under proper instructions by the court, the verdict will not be disturbed when there is a substantial conflict in the evidence.

SALE AND ACCEPTANCE—QUESTION FOR JURY.—When, from the entire evidence, different minds might honestly reach different conclusions as to the sale and acceptance of the property claimed to have been sold, the sale and acceptance are questions for the jury, and their verdict will not be disturbed.

RES GESTAE.—Time is not necessarily a controlling element or principle in the matter of *res gestae.*

PARTNERSHIP.—When an attempt is made to show a partnership, and there is no evidence whatever showing the same, it is not error for the court to so decide in the presence of the jury.

EXCEPTIONS.—Exceptions will not be considered unless saved.

STATEMENTS—ADMISSIONS—IMPEACHMENT.—Statements and admissions made by a party to a suit may be put in evidence by the opposing party without calling the party's attention to them or laying any foundation for impeachment.

VERDICT—EXCEPTIONS—INSTRUCTIONS.—Where the material issues are fairly submitted to the jury by proper instructions, the verdict of the jury or the order of the court overruling a motion for a new trial will not be set aside by the appellate court on the ground of the insufficiency of the evidence to justify the verdict, where the evidence on such issues is conflicting and no exceptions taken by appellants to the instructions given.

(Syllabus by the court.)

APPEAL from District Court, Ada County.

S. L. Tipton and Texas Angel, for Appellants.

The evidence is insufficient to justify the verdict. There was no evidence to show a contract of sale from the plaintiff to the defendants of the personal property described in the complaint. The contract of sale is denied in the answer, and the denial is sufficient to enable the defendants to raise the question of the sufficiency of the contract under the statute of frauds. (*Feeney v. Howard,* 79 Cal. 525, 12 Am. St. Rep. 162, 21 Pac. 984; *Harris v. Knickerbocker,* 5 Wend. 638; *Berrien v. Southack,* 26 N. Y. St. Rep. 932, 7 N. Y. Supp. 324; *Fontaine v. Bush,* 40 Minn. 141, 12 Am. St. Rep. 722, 41 N. W. 465; *May v. Sloan,* 101 U. S. 231; Browne on Statute of Frauds, sec. 511; Bliss on Code Pleading, sec. 353.) At common law, delivery is essential to support the count for goods sold and delivered. (1 Benjamin on Sales, p. 334, sec. 325; 1 Chitty on Pleading, 345, 347; 2 Benjamin on Sales, p. 980, sec. 1125, note 6; 1 Benjamin on Sales,

p. 327, sec. 314.) The delivery was essential to the right of recovery in this case, inasmuch as the sale was not a consummated one until delivery at Nampa. But the statute of frauds in this case is complete bar to the respondents' right to recover. There was no memorandum such as the statute requires. There was no writing whatever. There was no part of the purchase price paid, and there was no delivery of any portion of the goods to the appellants, and there was no acceptance by them as required by the statute. (Benjamin on Sales, p. 160, sec. 139, citing Blackburn on Sales, 22, 23; *Shindler v. Houston,* 1 N. Y. 261, 49 Am. Dec. 316, and note; *Caulkins v. Hellman,* 47 N. Y. 449-452, 7 Am. Rep. 461; *Stone v. Browning,* 51 N. Y. 211; *Brewster v. Taylor,* 63 N. Y. 587; *Cooke v. Millard,* 65 N. Y. 352, 373, 22 Am. Rep. 619; *Shepherd v. Pressey,* 32 N. H. 57; *Kerkhof v. Atlas Paper Co.,* 68 Wis. 674, 32 N. W. 766; *Terney v. Doten,* 70 Cal. 399, 11 Pac. 743; *Hinchman v. Lincoln,* 124 U. S. 38, 8 Sup. Ct. Rep. 369; *Kirby v. Johnson,* 22 Mo. 354; *Bowers v. Anderson,* 49 Ga. 143; Baker on Sales, c. 14; 1 Benjamin on Sales, sec. 140, note 2, and cases cited; *Townsend v. Hargraves,* 118 Mass. 333.) Mere words are not a sufficient delivery and acceptance, but there must be some unequivocal act or conduct over and beyond the mere terms of the verbal agreement, indicating on the one hand an intent to vest the ownership and absolute dominion in the vendee, and, on the other hand, an intent to take the goods as owner of such title as the contract calls for in performance of the agreement. (*Gaudet v. Belknap,* 1 Cal. 402; *Malone v. Pluto,* 32 Cal. 103; *Phillips v. Hunnewell,* 4 Greenl. 376; *Edwards v. Grand Trunk Ry. Co.,* 54 Me. 105; *Snow v. Warner,* 10 Met. 136, 43 Am. Dec. 417; *Dule v. Simpson,* 21 Pick. 384; *Denny v. Williams,* 5 Allen, 3; *Alderton v. Buchoz,* 3 Mich. 322, 329; *Kirby v. Johnson,* 22 Mo. 354; *Bass v. Walsh,* 39 Mo. 198; *Matthiesson v. McMahon,* 38 N. J. L. 541; *Hinchman v. Lincoln,* 124 U. S. 38, 8 Sup. Ct. Rep. 369; *Cooke v. Millard,* 65 N. Y. 352, 373, 22 Am. Rep. 619; *Shepherd v. Pressey,* 32 N. H. 56; *Bailey v. Ogden,* 3 Johns. 421, 3 Am. Dec. 509; *Phillips v. Bristol,* 2 Barn. & C. 511.) It was sufficient that the bill of exceptions was contained in the statement, and it was not neces-

sary that a separate and distinct document denominated a bill of exceptions should be made. A statement of the case containing the exceptions was sufficient. (*Lockhart v. Rollins,* 2 Idaho, 540, 21 Pac. 413; *Yates v. Smith,* 40 Cal. 669; *People v. Lee,* 14 Cal. 510.) Declarations to become evidence as a part of the *res gestae* must accompany the act which they are supposed to characterize, and must so harmonize with it as to be obviously a part of the same transaction. (*Moore v. Meacham,* 10 N. Y. 207; *Enos v. Tuttle,* 3 Conn. 250; *Cherry v. Butler,* 17 S. W. 1090; *Tisch v. Utz,* 142 Pa. St. 186, 21 Atl. 808; *Conlan v. Grace,* 36 Minn. 276, 30 N. W. 880; *Dawson v. Pogue,* 18 Or. 94, 22 Pac. 640; 2 Wharton on Evidence, sec. 1174; *State v. Daugherty,* 17 Nev. 376, 30 Pac. 1074; *People v. Dewey,* 2 Idaho, 83, 6 Pac. 103, 5 West Coast Rep. 812; *Binns v. State,* 57 Ind. 46, 26 Am. Rep. 48.) Whether a partnership exists or not is a question of fact. (*McDonald v. Matney,* 82 Mo. 358; *McMullan v. McKenzie,* 2 Greenl. 368; *Hunter v. Hubbard,* 26 Tex. 549; *Daggett v. Jordan,* 2 Fla. 541, 549; *Dulany v. Elford,* 22 S. C. 304, 308; *Kahn v. Central Smelting Co.,* 2 Utah, 371.) When the language of a written contract is neither ambiguous nor technical, parol evidence is not received to explain it and so establish a new term to it. (*Grace v. American Central Ins. Co.,* 109 U. S. 283, 3 Sup. Ct. Rep. 207; *Partridge v. Insurance Co.,* 15 Wall. 573; *Condee & Co. v. Citizens' Ins. Co.,* 4 Fed. 143.)

George H. Stewart and W. E. Borah, for Respondents.

It is the delivery in pursuance of the contract, and not the time, which makes the sale valid. In other words, if the goods are delivered it takes it out of the statute, although the delivery be made long after the sale. The statute does not require the delivery to be made at the time of sale, but is sufficient if made at all. (*McKnight v. Dunlop,* 5 N. Y. 537, 55 Am. Dec. 370; *Van Woert v. Albany Ry. Co.,* 67 N. Y. 538; *Jackson v. Tupper,* 101 N. Y. 515, 5 N. E. 65; *Marsh v. Hyde,* 3 Gray, 331; *Townsend v. Hargraves,* 118 Mass. 325; *McCarty v. Nash,* 14 Minn. 127; *Gaslin v. Pinney,* 24 Minn. 322; *Ortloff v. Klitzke,* 43 Minn. 154, 44 N. W. 1085; *Schmidt v. Thomas,* 75 Wis. 529, 44 N. W.

771; *Sullivan v. Sullivan,* 70 Mich. 583, 38 N. W. 472; *Somers v. McLaughlin,* 57 Wis. 358, 15 N. W. 442.) The statute of frauds only relates to executory contracts, and not executed contracts; full performance takes it out of the statute. (*Hinkle v. Fisher,* 104 Ind. 84, 3 N. E. 624; *King v. Jarmon,* 35 Ark. 190, 37 Am. Rep. 11; *Cartan v. David,* 18 Nev. 311, 4 Pac. 61; *Dodge v. Crandall,* 30 N. Y. 294; *Brown v. Farmers' Loan etc. Co.,* 117 N. Y. 266, 22 N. E. 952.) Delivery to an attorney, agent or anyone contemplated by the purchaser is sufficient. (*Michelstetter v. Weiner,* 82 Wis. 298, 52 N. W. 435; *Alexander v. Oneida Co.,* 76 Wis. 56, 45 N. W. 21; *Jarvin v. Maxwell,* 23 Wis. 51.) Delivery to the common carrier in this case was sufficient. The goods were shipped in the name of Bradbury & Co., at their request. (*Bullock v. Tschergi,* 13 Fed. 345.) Question of acceptance is a question for the jury, and their finding is conclusive. (*Garfield v. Paris,* 96 U. S. 557; *Galvin v. MacKenzie,* 21 Or. 184, 27 Pac. 1039; *Theilen v. Rath,* 80 Wis. 263, 50 N. W. 183; Baker on Sales, sec. 282a.) Where there is a conflict of evidence, the supreme court will not inquire into the sufficiency of the evidence to sustain the verdict. We will not burden the brief in an attempt to cite all the authorities on this point. (Folios 88, 89, 93, 191-194, 198, 200; *Campe v. Meierdiercks,* 87 Cal. 290, 25 Pac. 419; *Lynch v. Welby,* 87 Cal. 441, 25 Pac. 548; *De Brutz v. Jessup,* 54 Cal. 182; *Altschue v. Doyle,* 48 Cal. 535; *Macy v. Davila,* 48 Cal. 647; *Higurra v. Bernal,* 46 Cal. 581; *Lorenzana v. Camarillo,* 41 Cal. 467; *McGarrity v. Byington,* 12 Cal. 432; *Taft v. Kyle,* 15 Nev. 416; *Simpson v. Williams,* 18 Nev. 432, 4 Pac. 1213; *Ainsley v. Idaho World Printing Co.,* 1 Idaho, 641.) Without reference to conflict of evidence, if there is any evidence, however slight, tending to sustain a finding or verdict it is conclusive as to the fact. (*Capital Sav. Bank v. Reel,* 62 Cal. 419; *People v. Darr,* 61 Cal. 514; *Bernal v. O'Hanlin,* 59 Cal. 284; *Smith v. Arnold,* 56 Cal. 640; *Doherty v. Enterprise Ptg. Co.,* 50 Cal. 187; *Trenor v. Central Pac. Ry. Co.,* 50 Cal. 223; *Deffeliz v. Pico,* 46 Cal. 290.) None of the alleged errors occurring at the trial of this cause have been preserved and saved so as to enable this court to consider them.

(Idaho Rev. Stats. 1887, sec. 4426; *Lockhart v. Rollins,* 2
Idaho, 540, 21 Pac. 413; *Sebree v. Smith,* 2 Idaho, 359, 16
Pac. 915.)   The phrase "final hearing" has a well-settled mean-
ing, of course, and refers alone to the final determination of
equity cases, but in reference to the word "trial," it has been
held, as we stated, that it did not mean a final determination.
(*Gaplin v. Critchlow,* 112 Mass. 329; *Akerly v. Vilas,* 24 Wis.
165, 1 Am. Rep. 166; *Home Life Ins. Co. v. Dunn,* 20 Ohio
St. 175, 5 Am. Rep. 642; *Adams Express Co. v. Trigo,* 35 Md.
47; *Well v. McPike,* 21 Cal. 316; *Guthrie v. Phelan,* 2 Idaho,
95, 6 Pac. 107.)   A mere transcript of the reporter's notes,
with objections and rulings thereon, cannot be regarded or con-
sidered as answering for a bill of exceptions; in other words,
the mere noting the exceptions in the record, especially under
our statute, is not sufficient.   (*People v. Getty,* 49 Cal. 581;
*Caldwell v. Parks,* 50 Cal. 502; *Valleau v. Superior Court,* 62
Cal. 290; *January v. Superior Court,* 73 Cal. 537, 15 Pac. 108;
*Williams v. Benicia Water Co.* (Cal.), 4 Pac. 382.)   Declara-
tions made at a time after the event and under circumstances as
to warrant the trial court in presuming that they grew out of
it, and were dependent upon and could not have been devised
or contrived by the party for his own purpose, are *res gestae.*
(*People v. Vernon,* 35 Cal. 49, 95 Am. Dec. 49, and note;
*State v. Horan,* 32 Minn. 394, 50 Am. Rep. 583; *Augusta
Factory v. Barnes,* 72 Ga. 217, 53 Am. Rep. 838; *Pilkenton v.
Gulf etc. Ry. Co.,* 70 Tex. 226, 7 S. W. 805; *Mosely v. Travel-
ers' Ins. Co.,* 8 Wall. 437; *State v. Jones,* 64 Iowa, 349, 17 N.
W. 911, 20 N. W. 470; *State v. Ah Loi,* 5 Nev. 82; *New Eng-
land Ins. Co. v. De Wolf,* 8 Pick. 56; *Eastman v. Bennett,* 6
Wis. 232.)   There was no evidence of a partnership, and then
it became the duty of the court alone to pass on the question
of whether there was any evidence of partnership.   (*Bryce v.
Joynt,* 63 Cal. 375, 49 Am. Rep. 94; *Reed v. Clark,* 47 Cal.
194; *Gorton v. Hadsell,* 9 Cush. 508.)   Wherever a written
statement is introduced merely as an admission, the party
against whom it is introduced may explain its terms by parol,
however solemn in its nature the instrument may be.   (*Duncan
v. Matney,* 29 Mo. 368, 77 Am. Dec. 575; *Smith v. Grego,* 54

Hun, 22, 7 N. Y. Supp. 86; *Bingham v. Bernard,* 36 Minn. 114, 30 N. W. 404; *Auzerais v. Naglee,* 74 Cal. 60, 15 Pac. 371; Browne on Parol Evidence, sec. 6, p. 13; *Jenny Lind Co. v. Bower,* 11 Cal. 194.)

SULLIVAN, J.—This action was brought to recover the value of five New Era ditchers, alleged to have been sold to, and received and accepted by, appellants, who were defendants in the court below. The answer is a general denial of the allegations of the complaint. The action was tried by the court, with a jury, and a verdict rendered in favor of respondents for the sum of $6,052.91, together with interest amounting to $1,659,21, on which verdict judgment was duly entered against appellants. A motion for a new trial was interposed and overruled by the court. This appeal is from the order denying the motion for a new trial and from the judgment.

Respondents contend that the errors alleged to have occurred on the trial were not properly saved and preserved so as to authorize this court to consider them on this appeal. Their contention is, that under the provisions of section 4426 of the Revised Statutes of 1887, each exception taken on the trial must be settled at the time the decision is made (other than those deemed excepted to by the provisions of section 4427 of the Revised Statutes), unless a different time is agreed upon by the parties; that no exceptions were settled during the trial and no time agreed upon by the parties for their settlement. The record contains a stipulation, in which it is agreed that at the trial of this case, in April, 1892, which resulted in a disagreement of the jury, the following entry was made in the minutes of the court, to wit: "The parties here stipulated that they might prepare a bill of exceptions after trial," and upon this stipulation the appellants rely and contend that it remained in force and effect at the trial that resulted in the judgment from which this appeal was taken; while respondents contend that said stipulation applied to the trial then in progress, and no other, and applied to a settlement of a bill of exceptions under the provisions of section 4430 of the Revised Statutes of 1887, and not to exceptions taken on the trial. This conten-

tion was denied by the trial court, and no exception taken thereto, and no appeal has been taken therefrom.

The plaintiff cannot have errors alleged to have been committed against himself reviewed on defendant's appeal. The appeal of either party brings up only the errors alleged to have been committed against himself. If the respondent, in an appeal, desires to have errors against himself corrected, he must present them to this court, on his own appeal. (*Jones v. St. John Irr. Co.,* 2 Idaho, 58, 3 Pac. 1.) The first error specified is the insufficiency of the evidence to justify the verdict. Under this specification of error the question of the validity of the contract sued on, when tested by the statute of frauds, is raised. It is contended that as the value of the property sued for is shown to have exceeded $200, the contract, or some memorandum thereof, must be in writing and subscribed by the party charged, or by his agent, unless the buyer accepted and received a part of said property, or paid at the time of the bargain some part of the purchase price. That as none of those requirements were complied with, said contract comes within the provisions of section 6009 of the Revised Statutes of 1887.

The provisions of said section claimed to be applicable to this case are as follows: "In the following cases the agreement is invalid, unless the same, or some note or memorandum thereof, be in writing, and subscribed by the party charged or by his agent. Evidence, therefore, of the agreement cannot be received without the writing or secondary evidence of its contents: . . . . Subd. 4. An agreement for the sale of goods, chattels or things in action, at a price not less than $200, unless the buyer accept and receive part of such goods and chattels, or the evidences, or some of them, of such things in action, or pay at the time some part of the purchase money."

It is sufficient, under this section of the statute, if the chattels, goods or things in action are delivered to and accepted by the purchaser, at any time after the contract of purchase is made. But unless the provisions of said section above quoted are complied with, the seller could not, at any time after the contract was made, deliver the goods and compel an acceptance of them. However, if the goods are received and accepted by

the purchaser, the contract is then taken out of the statute of frauds, and may be enforced against the buyer for the purchase price.

It is alleged in the complaint that said ditchers were sold to appellants on the fourteenth day of March, 1890, and that thereafter they accepted and received the same. It is not claimed by respondents that they aver or prove a delivery and acceptance at the time the contract of sale was entered into, or that the contract, or some note or memorandum thereof, was in writing, signed by appellants or by their agent, or that any part of the purchase money was paid at the time the contract was entered into. It is the receipt and acceptance of the machines, some fifteen days after the contract of purchase was made, that respondents rely upon as taking this contract out of the provisions of said section, and we think with reason. If a contract of sale is made, and the property subsequently received and accepted by the purchaser, it is then too late to escape liability thereon, because of the provisions of said section. Had the purchaser refused to receive and accept the property, and suit been brought to enforce the contract, said statute would have been a complete defense to such action, but after the receipt and acceptance of the property, the virtue of said section, as a defense to an action to recover the purchase price, is gone. This section of the statute of frauds only relates to executory contracts, and not to executed ones. Receipt and acceptance of the property sold, at any time after making the contract, takes the contract out of the statute of frauds. (*Hinkle v. Fisher,* 104 Ind. 84, 3 N. E. 624; *King v. Jarmon,* 35 Ark. 190, 37 Am. Rep. 11; *Cartan v. David,* 18 Nev. 311, 4 Pac. 61; *Dodge v. Crandall,* 30 N. Y. 294; *Brown v. Farmers' Loan etc. Co.,* 117 N. Y. 266, 22 N. E. 952.)

The second contention is that said ditchers were not delivered to or received and accepted by appellants. The evidence of respondents shows that at the time said ditchers were ordered J. M. Bray informed Sherman M. Coffin that a man by the name of Jessop was going to use the ditchers in the construction of a certain ditch which appellants were constructing under the supervision of J. M. Bray. It also shows that

when the ditching machines arrived at Nampa, Jessop appeared and assisted in setting them up ready for use; that he took possession of them and took them out upon the aforesaid ditch, and went to work thereon with them; that while taking them out on the ditch he met Mr. Bray; that he used them on said ditch under the immediate supervision of Mr. Bray for two months, at least. It was conceded on the trial that the ditchers were delivered to Jessop, who was a subcontractor of appellants, and the question of acceptance does not appear to have attained special prominence during the trial of the case. Upon a careful review of the entire evidence, I think it tends to show that the ditchers were purchased for the use of Jessop, and that he received and accepted them, and that his receipt and acceptance was the receipt and acceptance of Bradbury & Bray, and bound them.

The questions of sale and delivery were submitted to the jury, upon an instruction by the court at the request of appellants, whereby the jury was instructed that to entitle the plaintiffs to recover they must establish by a preponderance of evidence the sale and delivery of the ditchers to the defendants, and by their verdict they found those points in favor of respondents. When from the entire evidence different minds might honestly reach a different conclusion, as to the acceptance of the property sold, the question of acceptance is one of fact for the jury, and their verdict thereon will not be disturbed. Nor will the order of the court denying a motion for a new trial be reversed when the aforesaid conditions exist. (See note to *Shindler v. Houston,* 49 Am. Dec. 316; *Gray v. Davis,* 10 N. Y. 291; Baker on Sales, sec. 382a; *Theilen v. Rath,* 80 Wis. 263, 50 N. W. 183; *Galvin v. Mackenzie,* 21 Or. 184, 27 Pac. 1039; *Garfield v. Paris,* 96 U. S. 557; *Hinchman v. Lincoln,* 124 U. S. 39, 8 Sup. Ct. Rep. 369.)

Considerable authority is cited on the question as to what acts constitute an acceptance under said section 6009. The correctness of the rule established by the authorities cited is not questioned. The case of *Shindler v. Houston,* 1 N. Y. 261, 49 Am. Dec. 316, is cited as a case in point. It was held in that case that delivery and acceptance of goods, such as will

take it out of the statute of frauds, cannot be shown by mere
words; some acts transferring possession are necessary. That
case is not in point, for the reason that it is not claimed nor
shown that the transfer of the possession of said machines was.
made by mere words; but that the machines were set up and
possession of them given; that respondents parted with posses-
sion and thereafter exercised no rights of possession or owner-
ship over them; that the person, for whose use they were in-
tended, took them and put them to the very use for which they
were purchased. The case of *Hinchman v. Lincoln,* 124 U. S.
38, 8 Sup. Ct. Rep. 369, is cited as a case very similar to the
one at bar. That is a case where the facts, in relation to the
contract of sale alleged to have been within, the statute of
frauds, were admitted. There was no dispute as to the facts
on which appellant relied, showing, as he claimed, sale, delivery
and acceptance. The court held that as there was no dispute
as to the facts, it belonged to the court to determine their legal
effect. It was also held that to take an alleged contract of sale
out of the operation of the statute of frauds, there must be acts
of such a character as to place the property unequivocally with-
in the power and under the exclusive dominion of the buyer,
as absolute owner, and that when anything remained to be
done by the seller to perfect the delivery, such fact would be
generally conclusive that there was no receipt by the buyer.
This case is very different from the one under consideration.
The facts of sale, delivery and acceptance were in dispute, and
nothing is shown which would indicate that anything remained
to be done by the sellers to perfect the delivery of said machines.

It is earnestly contended by appellants, and with apparent
confidence, that all of the evidence taken together shows that
the sale of said ditching machines was made by Stearns to
Jessop a day or two before Sherman Coffin met Bray at Nampa.
It is claimed that Stearns testified that he sold said machines
to Jessop. Mr. Stearns, as a witness for appellants, on direct
examination, did testify that he sold four ditchers to Jessop.

He afterward testified as follows, to wit: "Q. Why did you
telephone for Coffin to come up? A. Because I wanted him
to sell those ditchers, so that I could make a little money. That

is what I did it for." Further on he testified as follows: "Q. And you assisted Coffin all the way through the negotiations? A. No, I don't think I did all the way. Q. Did you hear anything, or all that was said, on that day in relation to the sale of those ditchers to Jessop? A. I don't know whether I did or not. The sale was not consummated in my presence. Q. Then the sale was not consummated until Sherman Coffin came up? A. No, sir. It might have been at that time, but I don't remember. Q. And Jessop was in Utah? A. Jessop was in Utah." This evidence needs no comment. It is too plain to be misconstrued or misunderstood. It clearly shows that no contract or bargain for the sale of the machines was made between Jessop and Stearns, and that if any bargain was made it was made between Coffin & Bray, at a time when Jessop was in Utah.

Sherman Coffin testified that no sale was made until he met Bray at Nampa, in response to a dispatch from Stearns. He also testified that he never met Jessop until the ditchers arrived at Nampa. That John M. Bray was the man who gave the order for the ditchers and who agreed to pay for them, as a member of the firm of Bradbury & Bray. This was denied by Mr. Bray. He denied that he made any contract for the purchase of said machines, and denied that he had any authority from Jessop to purchase said machines. He testified as follows, to wit: "I says, 'No, sir, Mr. Coffin, I will have nothing to do with those machines whatever. I have no authority to buy machines for Jessop.'" This evidence shows that Bray did not purchase them for Jessop.

Mr. Bray also testified to a conversation alleged to have been had with Frank R. Coffin, about the middle of May, 1890, in which he stated to Coffin that he had nothing to do with the machines whatever, "That the entire sale of those machines was between Sherman Coffin, Stearns and Jessop."

The testimony of Stearns shows that he had a conversation with Jessop in regard to ditching machines in the presence of J. M. Bray a day or two before Sherman Coffin met Bray. That thereafter Jessop left Nampa for Utah, and Stearns telephoned Coffin to come to Nampa, and on his arrival introduced

him to J. M. Bray as the man who could talk with him about those ditchers, and the evidence shows that they did talk about ditchers. It may be true, as testified by Mr. Bray, that he then and there informed Sherman Coffin that he would have nothing to do with the machines whatever, and that he had no authority to purchase machines for Jessop, but regardless of those statements, the testimony tends to show he did have some conversation about them, and authorized Sherman Coffin to have them shipped in the name of Bradbury & Bray, and afterward requested Coffin to not have them shipped in said firm's name.

Coffin testified that the contract was made with Bray. Stearns' testimony is to the same effect. Bray testified that it was made between Stearns, Coffin and Jessup, and from this conflicting evidence and other evidence the jury found against appellants.

The testimony of Charles Stewart tends to corroborate the testimony of Sherman M. Coffin. He testified as follows: "I rode up to Bray, who was out on the ditch where Jessop's contract was. I rode up to Bray and I think he wasn't using very good language toward Jessop, because Jessop was getting behind. He says, 'I am in the soup with Coffin Bros. for those damned ditchers.'" This testimony is not contradicted.

D. H. Birdsall, a witness for respondents, testified that he met Bray at Nampa between May 27 and 30, 1890, and had some conversation with him about selling him Safety Nitro Powder, and he informed Bray that Coffin Bros. were agents for said powder, and would supply Bray with said powder. Bray thereupon informed Birdsall that he had some difficulty with Coffin Bros., and did not care to deal with them. After some further conversation Birdsall informed Bray that he was going to Caldwell to see Sherman M. Coffin, and Bray thereupon requested him to say to Coffin that he (Bray) did not wish to have any trouble with him (Sherman M. Coffin), and that he would see that they (Coffin Bros.) were paid for the ditchers. This testimony is contradicted by Bray. Birdsall and Stewart were disinterested witnesses, and the jury no doubt gave some weight to their testimony, as corroborating

that of Sherman M. Coffin, but it is urged by appellants that if said statements were made by Bray, they would be perfectly consistent with the theory that Bradbury & Bray were only guarantors, and not purchasers. There might be some point in this contention if J. M. Bray admitted that he was simply guarantor, but he denies that they were guarantors, and there is no evidence tending to show that they were except that contained in the letter written by Sherman M. Coffin to J. M. Bray dated May 24, 1890.

If the defense in this suit had been that appellants were guarantors, and not liable because such gauranty was not in writing, then the contention of appellant would be of some weight; but as that is denied, and the issue was as to whether the appellants were original purchasers, the evidence of Stewart & Birdsall tends to corroborate the testimony of respondents on that issue. The issue as to whether Bradbury & Bray were simply guarantors is not in this case. It would appear that said statements were made by Bray to Stewart & Birdsall, not upon the theory that Bradbury & Bray were guarantors, but upon the theory that they were purchasers.

C. W. Moore's testimony also corroborates Sherman M. Coffin as to the sale. He testified that he had no knowledge of the sale of any goods at the time a certain telegram was sent, except the ditchers to Bradbury & Bray. By what means the witness became possessed of that knowledge the record fails to disclose. The testimony of Sherman M. Coffin and Mr. Bray is so unsatisfactory and conflicting in substantial matters that it is impossible for this court to say how much of said testimony is true and how much is false, and as the jury are the exclusive judges of the weight to be given to the testimony of any witness or witnesses, and they having found on the purchase, delivery and acceptance of the machines, this court, under the conditions, would not be justified in disturbing the verdict.

Appellants contend that the court erred in permitting Sherman M. Coffin and Frank R. Coffin to testify in regard to a certain telephone message sent by the former to the latter, inquiring as to the responsibility of appellants. The evidence

shows that on the day the ditchers in controversy were ordered, Sherman M. Coffin waited at Nampa for a reply to a telegram sent to Jessop until late in the day. That he finally informed Mr. Bray that he must return to his home, at Caldwell, some nine or ten miles from Nampa; that thereupon Bray requested him to order five ditchers, and stated that if Jessop could not use the fifth ditcher that Bradbury & Bray would use it themselves. That witness got his team and drove to his home at Caldwell, and put his team out, and immediately thereafter, and before ordering said machines from Chicago, he telephoned his partner, Frank R. Coffin, at Boise City, and asked him if Bradbury & Bray were good for five ditchers at $1,100 each, and requested him to find out and let him know. That this all occurred within two hours after he left Nampa. This telephone communication and Frank R. Coffin's testimony in regard to receiving the same was objected to, and the admission thereof is assigned as error. It is urged that the same is no part of the *res gestae,* that it took place after the agreement for the sale of the ditchers had been entered into, and was a communication from one of the plaintiffs to his partner, and not in the presence of the defendants or either of them. That said testimony is self-serving and too remote to be a part of the *res gestae.*

Counsel for appellants contend that the rule applicable to this class of testimony is that such declarations, to become competent evidence, as part of the *res gestae,* must accompany the act which they are supposed to characterize, and must so harmonize with it as to be obviously a part of the same transaction, and in support of this rule cite *Moore v. Meachman,* 10 N. Y. 207; *Enos v. Tuttle,* 3 Conn. 250; *Cherry v. Butler,* 17 S. W. 1090; *Tisch v. Utz,* 142 Pa. St. 186, 21 Atl. 808; *Conlan v. Grace,* 36 Minn. 276, 30 N. W. 880; 1 Wharton on Evidence, sec. 265; 2 Wharton on Evidence, sec. 1174; *Dawson v. Pogue,* 18 Or. 94, 22 Pac. 640; *State v. Daugherty,* 17 Nev. 376, 30 Pac. 1074; *People v. Dewey,* 2 Idaho, 83, 6 Pac. 103, 5 West Coast Rep. 812; *Binns v. State,* 57 Ind. 46, 26 Am. Rep. 48.

In *Moore v. Meachman, supra,* the court, in passing upon the question of the admission of certain declarations, said: "The general rule is that declarations to become a part of the *res gestae* must accompany the act which they are supposed to characterize, and must so harmonize as to be obviously one transaction," and held that the general rule applicable to the admission of such declarations as a part of the *res gestae* was the rule which should govern in that case. *Enos v. Tuttle, supra,* was a case where a plaintiff undertook to introduce declarations of an absconding debtor as evidence against a garnishee, and the court held that such declarations were not evidence for the plaintiff. *Cherry v. Butler, supra,* held the declarations of payee on draft narrating the fact that he had twice paid it were self-serving, and error to admit them.

In *Tisch v. Utz,* 142 Pa. St. 186, 21 Atl. 808, it was held that declarations of a judgment debtor were not admissible in evidence for the purpose of impeaching the judgment. In *Conlan v. Grace,* 36 Minn. 276, 30 N. W. 880, it is held that: "Declarations of a party, to be admissible as a part of the *res gestae,* must be contemporaneous with, or at least so connected with the main fact in issue as to constitute one transaction." *Dawson v. Pogue,* 18 Or. 94, 22 Pac. 640, holds: "Ordinarily, acts and declarations of parties to an action are not competent evidence in their behalf. There are, however, exceptions to the rule." *State v. Daugherty, supra,* holds: "It is impossible to tie down to time the rule as to declarations; we must judge from all the circumstances of the case; we need not go to the length of saying that a declaration made a month after the fact would of itself be admissible, but if, as in the present case, there are connecting circumstances, it may, even at that time, form part of the whole *res gestae,* and that the declaration was simply a narration of past events or occurrences and was incompetent."

In 1 Wharton on Evidence, section 265, it is held that such declarations are. inadmissible if made so far prior to the act sought to be characterized as to give opportunity for their correction in way of preparation, or if made so long afterward as to leave an interval—which interval should not be measured

by time but by the circumstances of the case—in which excuses, explanations or aggravations could be got up." 2 Wharton on Evidence, section 1174, is applicable to the admission of agents in matters of tort, and not in point. *Binns v. State,* 56 Ind. 46, 26 Am. Rep. 48, holds that: "A declaration which is simply a narrative of past events . . . . is inadmissible in evidence."

The authorities cited state the general rule applicable to the admission of declarations made by a party, as evidence in his own behalf, and some of them recognize that there are exceptions to the general rule. In some of them time is considered a controlling element and in others not. They hold that such declarations, to become competent evidence for the party making them, must be a part of the *res gestae* or at least so considered. The term *"res gestae,"* is used in one class of cases to indicate the very matter in issue, the ultimate thing itself, the thing controverted, and in others the term is used to indicate the surrounding facts of a transaction, which explain or characterize the main fact.

In 1 Greenleaf on Evidence, section 108, it is held that the surrounding circumstances constituting parts of the *res gestae* may always be shown to the jury, along with the principal fact; and their admissibility is determined by the judge, according to the degree of their relation to that fact, and in the exercise of his sound discretion." Whether declarations made after the occurrence of the litigated issue should be admitted as evidence in behalf of the party making them rests in the sound judicial discretion of the court. (*O'Connor v. Chicago etc. Ry. Co.,* 27 Minn. 173, 38 Am. Rep. 288, 6 N. W. 481; *State v. Ah Loi,* 5 Nev. 99; 1 Greenleaf on Evidence, sec. 108.)

In 1 Taylor on Evidence, sections 525, 526, it is stated that: "In all these cases the principal points of attention are, whether the circumstances and declarations offered in proof were so connected with the main fact under consideration as to illustrate its character, to further its object, or to form in conjunction with it one continuous transaction. It was at one time thought necessary that they should be contemporaneous with it; but this doctrine has of late years been rejected, and

it seems now to be decided that, although concurrence of time must always be considered as material evidence to show the connection it is by no means essential."

In *Insurance Co. v. Mosley,* 8 Wall. 397, which was an action on an accident insurance policy, the declarations of the deceased as to the cause of the injury from which he died made shortly after the injury was held competent evidence and a part of the *res gestae.* The court, speaking through Mr. Justice Swayne, in regard to certain declarations being part of the *res gestae* says: "To bring such declarations within this principle, generally, they must be contemporaneous with the main fact to which they relate. But this rule is by no means of universal application"; and quotes with approval from *Rawson v. Haig,* 2 Bing. 99, as follows: "It is impossible to tie down to time the rule as to such declarations. We must judge from all the circumstances of the case. We need not go to the length of saying that a declaration made a month after the fact would, of itself, be admissible; but if, as in the present case, there are connecting circumstances it may, even at that time, form a part of the whole *res gestae.*"

Referring to the doctrine applicable to the admission of such declarations, the court says: "The tendency of recent adjudications is to extend, rather than to narrow, the scope of the doctrine. Rightly guarded in its application, there is no principle in the law of evidence more safe in its results. There is none which rests on a more solid basis of reason and authority."

In *Board of Education v. Keenan,* 55 Cal. 642, Justice McKee, in delivering the opinion of the court, said: "Wharton defines '*res gestae,*' as those circumstances which are the undesigned incidents of a particular litigated act. These incidents may be separated from the act by a lapse of time more or less appreciable. They may consist of speeches of anyone concerned, whether participant or bystander; they may comprise things left undone, as well as things done. Their sole distinguishing feature is that they should be necessary incidents of the litigated act; necessary in this sense that they are part of the immediate preparations for, or emanations of, such act and are not produced by the calculated policy of the actors."

In *People v. Vernon,* 35 Cal. 49, 95 Am. Dec. 49, and note, it is held that: "Declarations to be a part of the *res gestae* are not required to be precisely concurrent in point of time with the principal fact, if they spring out of the principal transaction, if they tend to explain it, are voluntary and spontaneous, and are made at a time so near it as to preclude the idea of deliberate design, then they are to be regarded as contemporaneous, and admissible." (See, also, *State v. Horan,* 32 Minn. 394, 50 Am. Rep. 583; *Augusta Factory v. Barnes,* 72 Ga. 217, 53 Am. Rep. 838; *New England Ins. Co. v. De Wolf,* 8 Pick. 56; *State v. Jones,* 64 Iowa, 349, 17 N. W. Rep. 911, 20 N. W. 470; *State v. Ah Loi,* 5 Nev. 99; *Ross v. Bank of Burlington,* 1 Aiken, 43, 15 Am. Dec. 664.)

In *Milne v. Loisler,* 7 Hurl. & N. 786, it was held competent for the plaintiff, for the purpose of proving upon whose credit goods sued for were sold, to introduce in evidence a certain letter written by plaintiff to his agent, requesting him to inquire as to the financial standing of the defendant, of a person to whom the person receiving the goods had referred him for that purpose. The plaintiff stated in said letter that the defendant was the purchaser of said goods. And it was further held that the jury might look at the whole letter, and although in itself it was not evidence of the truth of the facts stated, it migh be considered as corroborative of plaintiff's version of the transaction. (1 Greenleaf on Evidence, Redfield's ed., sec. 108a.)

In Bouvier's Law Dictionary (edition of 1888) under the head of *"res gestae"* the following statement occurs: "In the United States the tendency is to extend, rather than narrow, the scope of the doctrine of *res gestae.* Although, generally, the declarations must be contemporaneous with the event sought to be proved, yet, where there are connecting circumstances, they may, even when made some time afterward, form a part of the *res gestae.* (*Insurance Co. v. Mosley,* 8 Wall. 397; *Railroad Co. v. Coyle,* 55 Pa. St. 402; *Harriman v. Stowe,* 57 Mo. 93; *Brownell v. Railroad Co.,* 47 Mo. 239; *Commonwealth v. Eastman,* 1 Cush. 181. And in England the decision of Cockburn, C. J., in *Bedingfield's Case,* 14 Cox C. C. 341, is

directly contrary, holding that the declarations must be con-
temporaneous with the event, to be admissible. This decision
has been vigorously opposed by Mr. Taylor and others. (See
14 Am. Law. Rev. 817, 15 Am. Law. Rev. 1-71; *Field v. State,*
57 Miss. 474, 34 Am. Rep. 479.)"

From a review of the authorities I think the decided weight
is that time is not necessarily a controlling element or principle
in the matter of *res gestae,* and that declarations made under
circumstances to warrant the court in presuming that they
grew out of the litigated issue and illustrate the true character
of the transaction and were dependent upon it, were not
designedly made or devised for a self-serving purpose, are evi-
dentiary facts and are not within the general rule applicable
to hearsay testimony. Such declarations are admissible al-
though not made at the exact time of the occurrence of the
principal fact in issue.

I think the evidence referred to comes within the rule laid
down in many of the authorities above cited. The declaration
or communication was not a narrative of past events or of
the contract of sale. It was an inquiry which any prudent
business man would naturally make before he would feel safe
in ordering upward of $6,000 worth of machinery for a cus-
tomer whose financial condition was not known to him. He
would very naturally want to know the ability of the purchaser
to pay. It is true the order for the ditchers had been given
and received some two hours before the inquiry under con-
sideration was made, but it was made before the ditchers were
ordered, and as I view it was made in the midst of the trans-
action and before all of the conditions were performed, which
were required to be performed before the contract became bind-
ing upon either party. It was a pertinent inquiry, and I think
it one of the reasonable emanations arising out of the contract
of purchase and dependent upon it; that it was not deliberately
devised or contrived by the parties for a self-serving purpose;
that it was spontaneously and not designedly made, and tends
to explain to whom the credit was given. Its truth or falsity
was for the jury.

The question litigated was whether the ditchers were sold to Bradbury & Bray and on their credit. Bray testified that they were sold to Jessop and he alone became liable for the payment of the purchase price, while Sherman M. Coffin testified that they were sold to Bradbury & Bray and on their credit. I think the testimony under consideration tends to show to whom the credit was given and was properly admitted.

Error is alleged because the court held that under the evidence no partnership for the sale of said machines existed between Stearns and Sherman M. Coffin. Appellants undertook to show that there was a partnership between Stearns and Coffin in the sale of said ditchers. Stearns and Coffin both testify that no such partnership existed; and there is not a scintilla of evidence tending to show a partnership. That being true, it was not prejudicial error for the court to so hold.

The fourth error assigned is that the court erred in admitting the testimony of Sherman M. Coffin in explanation of the sense in which he used the word "guaranty" in his letter of May 24, 1890, to John M. Bray. The letter was introduced as an admission of said respondent to show that at the time of writing it he considered Bradbury & Bray as guarantors, and not as original purchasers.

Under this contention appellants cite several authorities upon the proposition that when the language of a written contract is neither ambiguous nor technical, parol evidence is not received to explain it. These authorities are not in point, for the reason that said letter is not a written contract nor a part of one. I understand the rule to be that when a writing is introduced as an admission, and not as a part of the contract between the parties, it is always permissible for the party who wrote it, and against whom it was introduced to explain the meaning that he intended to convey. The rule applicable to oral admissions is the proper one to be applied to the evidence under consideration. (*Duncan v. Matney,* 29 Mo. 368, 77 Am. Dec. 575; *Smith v. Orego,* 54 Hun, 22, 7 N. Y. Supp. 86; *Bingham v. Bernard,* 36 Minn. 114, 30 N. W. 404; *Auzerais v. Nagle,* 74 Cal. 60, 15 Pac. 371; Browne on Parol Evidence,

sec. 6; *Morris v. St. Paul etc. R. R. Co.,* 21 Minn. 91; *Burke v. Ray,* 40 Minn. 34, 41 N. W. 240.)

The fifth error assigned is the refusal of the court to strike out that portion of Sherman M. Coffin's testimony in explanation of the word "guaranty" to wit: "We have dozens of entries in our books, at this time, which could show that fact." We cannot consider this objection for the reason that no exception appears to have been saved in the court below.

The sixth error assigned is that the court erred in permitting Charles Stewart, a witness on behalf of plaintiff, to testify as follows: "I rode up to Bray, who was out on the ditch where Jessop's contract was. I rode up to Bray, and think he wasn't using very good language towards Jessop, because Jessop was getting behind. He says, 'I am in the soup with Coffin Brothers for those damned ditchers.'"

Appellants contend: 1. That if this evidence was introduced for the purpose of establishing plaintiff's case as an admission of the contract sued on, it should have been introduced as a part of the testimony in chief, and not in rebuttal; 2. If it was introduced to impeach Bray, it was error to admit it, for the reason that Bray's attention was not called to it when he was on the witness stand. The first objection does not appear to have been taken in the court below, and cannot be considered for that reason. The second is not well taken, for the reason that statements and admissions made by a party to a suit may be proved without first calling the party's attention to them. The rule that the attention of the witness must be called to the statement made, and the time and place of making the same, in order to lay the proper foundation for impeachment, does not apply to this case. (1 Thompson on Trials, sec. 497; *Collins v. Mack,* 31 Ark. 685, 694; *Luces v. Flinn,* 35 Iowa, 9.)

After a careful review of all the evidence I find a substantial conflict on the material issues, and where the material issues are submitted to the jury on instructions of the court, not excepted to by appellants, the verdict of the jury will not be disturbed by the appellate court, nor will the order, overruling a motion for a new trial, be reversed, on the ground of insuffi-

ciency of the evidence to justify the verdict when there is a substantial conflict in the evidence. (*Ainslie v. Idaho World Printing Co.,* 1 Idaho, 641; *Dubrutz v. Jessup,* 54 Cal. 118; *Campe v. Meierdiercks,* 87 Cal. 290, 24 Pac. 419; *Lynch v. Welby,* 87 Cal. 441, 25 Pac. 548; *Garrard v. White,* 12 Ky. L. Rep. 656, 14 S. W. 966; *Ketcham v. Barbour,* 102 Ind. 576, 26 N. E. 127.)

I find no reversible error in the record. The judgment of the court below is affirmed with costs of this appeal in favor of respondents.

Morgan, J., concurs in the affirmance of the judgment.

Huston, C. J., took no part in the hearing or decision of this case.

MORGAN, J.—I concur in the affirmance of the judgment, but disagree with the opinion in regard to the admission of the telephone message of Sherman Coffin to his partner Frank Coffin which was as follows: "I asked him [Frank Coffin] if Bradbury & Bray were good for five ditchers at $1,100 each, or for $5,500." This was one and a half hours after his conversation with Bray, and after he had driven home, a distance of nine miles. It is precisely like a private conversation between the partners, at home, to determine whether it would be safe as a business venture to order the ditchers. I do not think it a part of the *res gestae,* and think it should have been excluded. I do not deem it necessary now to give the reasons for my opinion. It is evident, however, that it could have had no weight with the jury. It was an inquiry that would be equally as applicable, if Sherman Coffin considered Bradbury & Bray guarantors, or purchasers, or if he expected to get their names as sureties on a note signed by Jessop. It proved nothing and tended to prove nothing, and therefore was not prejudicial error.