[S. F. No. 1775.    Department Two. — August 6, 1901.]

## JOHN H. WILLIAMS, Respondent, v. SOUTHERN PA-CIFIC COMPANY, Appellant.

RAILROAD COLLISION — INJURY TO EMPLOYEE — PROXIMATE CAUSE OF IN-JURY — CONTRIBUTING NEGLIGENCE OF FELLOW-SERVANTS AND OF DEFENDANT. — Where the plaintiff, an employee upon a pay train, was injured as the result of the collision thereof with a freight train, the misconduct of the employees upon which, in departing prematurely from a station, contributed proximately to the injury, and the verdict was for the plaintiff, but the jury were authorized to find from the evidence that the accident would not have occurred if either train had been run in accordance with the rules, and also that the failure of the pay train to comply therewith was not due to the negligence of its employees, but to the negligence of the defendant in failing to furnish proper appliances, it must be considered, in support of the verdict, that the negligence of the defendant also contributed proximately to the injury, and that the defendant is liable therefor.

ID. — EVIDENCE — DECLARATIONS OF EMPLOYEES NOT PART OF RES GESTÆ — PREJUDICIAL ERROR. — In the action to recover damages for the injuries caused by the collision, the declarations of the employees of the defendant, made soon after the injury, and not as part of the res gestæ, but by way of narrative, and of explanation and accounting for the injury, so as to throw blame upon the defendant for not having furnished proper appliances, is not admissible, and the admission thereof is prejudicial error.

APPEAL from an order of the Superior Court of the City and County of San Francisco denying a new trial.    Edward A. Belcher, Judge.

The facts are stated in the opinion of the court.

Foshay Walker, and Mastick, Van Fleet & Mastick, for Appellant.

The evidence was insufficient to justify the verdict, the only negligence which proximately caused the injury being that of fellow-servants employed by the same employer.    (*Stevens* v. *San Francisco etc. R. R. Co.*, 100 Cal. 554; *Daves* v. *Southern Pacific Co.*, 98 Cal. 19;[1] *Long* v. *Coronado R. R. Co.*, 96 Cal. 269; *Congrave* v. *Southern Pacific R. R. Co.*, 88 Cal. 360; *Fa-*

---

[1] 35 Am. St. Rep. 133.

*gundes* v. *Central Pacific R. R. Co.*, 79 Cal. 97; *Brown* v. *Central Pacific R. R. Co.*, 72 Cal. 523.) The failure to furnish appliances, which was not the proximate cause of the injury, cannot sustain a verdict, where the negligence of fellow-servants is the promoting cause. (*Kevern* v. *Providence G. & S. M. Co.*, 70 Cal. 392,) The accident could not have happened if plaintiff's fellow-servants had exercised due care, and the company is not bound to furnish appliances to provide against the consequences of such negligence. (*Fowler* v. *Chicago etc. Ry. Co.*, 61 Wis. 159.) No presumption of negligence could arise from the fact of the accident. (*Sappenfield* v. *Main Street etc. R. R. Co.*, 91 Cal. 48; *Louisville etc. R.R. Co.* v. *Allen*, 78 Ala. 494, 503; *Georgia Pacific Ry. Co.* v. *Propst*, 83 Ala. 518, 526.) Surmises cannot take the place of proof of actionable negligence. (*Larson* v. *St. Paul etc. Ry. Co.*, 43 Minn. 488.) The declarations of the employees of the defendant, made after the accident, were not admissible against the defendant. (*Lissak* v. *Crocker Estate Co.*, 119 Cal. 442; *Durkee* v. *Central Pacific R. R. Co.*, 69 Cal. 533;[1] *People* v. *Ah Lee*, 60 Cal. 85, 91; *People* v. *Lane*, 100 Cal. 379, 383; *People* v. *Wong Ark*, 96 Cal. 125.)

Rodgers, Paterson & Slack, and George A. Hurlbut, for Respondent.

The jury were authorized to determine as a question of fact that the negligence of the defendant in failing to provide proper appliances proximately contributed to the injury and made defendant liable therefor. (*Sappenfield* v. *Main Street etc. R. R. Co.*, 91 Cal. 48; *Elledge* v. *National etc. Ry. Co.*, 100 Cal. 282.[2]) The declarations of the trainmen were admissible as part of the *res gestæ*. (*People* v. *Vernon*, 35 Cal. 49;[3] *Lund* v. *Tyngsborough*, 9 Cush. 36; *Hanover R. R. Co.* v. *Coyle*, 55 Pa. St. 396; *Commonwealth* v. *Hackett*, 2 Allen, 136; *Cross Lake etc. Co.* v. *Joyce*, 83 Ind. 990; *Union Pacific Ry. Co.* v. *Elliott*, 54 Neb. 299; *Insurance Co.* v. *Mosely*, 8 Wall. 403.) "Each particular case must be determined by its own peculiar facts." (*People* v. *Wong Ark*, 96 Cal. 127.) It is not the time in days, or even weeks, that determines the question of admissibility. (*O'Connor* v. *Chicago etc. Ry. Co.*, 27 Minn. 166;[4] *Insurance Co.* v. *Mosely*, 8 Wall. 403.) Haydock being superintendent of the defendant

---

[1] 58 Am. Rep. 562, and note.

[2] 38 Am. St. Rep. 290.

[3] 95 Am. Dec. 49, and note.

[4] 38 Am. Rep. 288, and note.

corporation, a conversation with him, in plaintiff's presence, was a conversation with the master. (Wheaton on Agency, sec. 159; *St. Louis etc. Ry. Co.* v. *Weaver*, 35 Kan. 412;[1] *Harrison* v. *Detroit etc. R. R. Co.*, 79 Mich. 409.[2])

TEMPLE, J.—This is an action for damages for personal injuries alleged to have been received in a collision between two trains. Plaintiff recovered a verdict of fourteen thousand dollars, and the appeal is by defendant from a refusal of a new trial.

The collision was on the Coast Division, a little west of San Ardo station, between a pay train and a freight train. The latter was going north, or in railroad vernacular, west,— meaning towards San Francisco. The pay train was, of course, going east, or from San Francisco.

The collision, according to plaintiff's evidence, was about 2,150 feet west of the station; according to defendant's evidence, 2,519 feet, and a little over 200 feet west of the west switch at the station.

The freight train was scheduled to arrive at San Ardo at 7:24, A. M., and to leave that station at 7:35, and was forbidden by the rules of the company to arrive or leave sooner than at said times. On that morning the freight train did arrive at 7:05, and pulled out towards San Francisco at 7:23,—twelve minutes earlier than it should have done.

The pay train, being a special, had no time limit, but was bound to keep out of the way of the regulars, and to that end was required to be at the station and side-tracked five minutes before the time of departure of the regular train. It follows, that had the freight train waited its time, the pay train had ample time to comply with this rule before the freight, by the rules, was allowed to proceed.

There was evidence tending to show, however, that the pay train was moving at an unwarranted speed, and was not "under control," as the rules required it should be, on entering the station-yard, the limits of which extend from whistling-post to whistling-post on either side. The train had not yet reached the whistling-post, and it is contended that the post was at least a quarter of a mile nearer the station than it ought to have been, and as the morning was quite foggy, the engineer was misled by the unusual position of the post, and

---

[1] 57 Am. Rep. 176.    [2] 19 Am. St. Rep. 180.

therefore, not knowing that he was near the station, did not slow up. It is contended, that had he been properly informed by a proper location of the post, he would have put the train under control, and the accident would have been avoided.

Weight is added to this point by the claim that the engineer was unacquainted with the road, and had to rely solely upon the signal-posts along the line, especially on such an obscure morning. It is made an independent point here, that the engineer being strange to the road, no pilot was sent with him, as the rules expressly require in such cases. The engineer was injured in the accident, and died before the trial. The witnesses for the plaintiff, who were train-hands, only remembered seeing him once before on the line, and on this point the defense produced no evidence. The plaintiff also complains that the engine was defective, in that it had no driving-wheel brakes, and the air-pressure was insufficient; also, that there were certain misleading marks upon certain culverts near the station. As the evidence appears in the transcript, I do not think these last points can help the plaintiff on this appeal.

That the premature departure of the freight train from the station was misconduct which contributed proximately to the injury of plaintiff, may be considered as established beyond question. It is contended by the plaintiff, that, admitting such to be the case, the reckless speed of the pay train, which he contends was caused by the neglect of the defendant, mainly in misplacing the whistling-post and in failing to provide a pilot for the engineer, contributed also proximately to the injury, and in such case the defendant is liable, even though gross negligence on the part of a fellow-servant also contributed proximately.

In its opening brief, appellant contended that the engineers on both trains were at fault, and plaintiff cannot recover for the negligence of his fellow-servants. The reply brief charges the fault upon the managers of the freight train alone. As to the absence of a whistling-post, and the employment of an engineer, who was unacquainted with the road, without a pilot, it is said it is only the case of furnishing imperfect appliances. Whistling-posts were not designed to serve any such purpose, and if they were, yet the injury came directly from want of care on the part of the engineer of the freight train, and in such case the employer is not responsible, even though the

accident might not have resulted if better appliances had been furnished.

But I think the jury could have found, on this evidence, that the accident would not have occurred if either train had been run as required by the rules, and, also, that the reason why the pay train was not under control, as it ought to have been, was because of the misplacement of the whistling-post, or that an engineer new to the road was in charge. The evidence is by no means as clear against the pay train as it is against the freight train, but the verdict is for plaintiff, and we must assume the facts to be as found, so far as possible. If this were so, there was no negligence on the part of the engineer of the pay train. His failure was caused entirely by the failure to furnish proper appliances. And, on the same supposition, the negligence of the defendant did contribute proximately to the injury.

If the position of the appellant upon the above proposition were sustained, it would probably end the case. It has therefore been considered, but upon other points it is clear that the judgment must be reversed.

The witness Oakes was allowed, over the objection and exception of appellant, to testify, that, soon after the accident, he had a conversation with Keyer, the engineer of the pay train. The witness, as conductor, was looking about to ascertain the facts, as he was required to report to the company. Keyer was badly injured, and had been removed from the engine, and was lying near the track. Witness asked him the cause of the accident, and the engineer replied that he did n't know he was coming into the station. He was lost; did n't see a whistling-post; did n't know where he was. At this point, Mr. Haydock, the division superintendent, came along, and a conversation between Haydock and the engineer was had to the same effect, in which Mr. Haydock remarked that there ought to have been a whistling-post.

The ruling admitting these declarations was clearly erroneous. It is contended that they were part of the *res gestæ.* This phrase seems clear enough in itself, and it is strange that it has been so diversely understood by the courts. The circumstances or parts of an event which is under proof may be shown. Statements are like other circumstances when they are part of it, and if the whole affair cannot be rightly understood without them, they are competent. Expressions of per-

sons who are actors, made during the occurrence, may generally, but not always, be proved. If spontaneous, and caused by the event, they may nearly always be shown. But if, after-.wards, no matter how shortly afterwards, there is an attempt to explain what has happened, or to account for it, or to defend one's self, or the like, it is incompetent, and inadmissible as *res gestæ.* A narrative, even if given during the occurrence, is inadmissible. (*Heckle* v. *Southern Pacific Co.*, 123 Cal. 441.) There the declaration attempted to be shown was made by the injured person while under the car-wheels. This court remarked that the occurrence had not been ended, and yet if it should appear that the remark was a narration of what had occurred, rather than a spontaneous expression, — an outgrowth of the occurrence,—it was not competent. (See also *Lissak* v. *Crocker Estate Co.*, 119 Cal. 442; 1 Greenleaf on Evidence, sec. 113.)

It is suggested that Haydock represented the principal, and therefore the statement to him was competent. Had there been a personal principal present, a remark made to him under the circumstances would not have been competent.

It is contended that the evidence was not injurious, but, clearly, it was upon a vital point, to wit, whether the engineer was misled by the lack of a whistling-post, since he was a new man on the road,—whether he was "lost." It was calculated to aid the case of the plaintiff, upon the most doubtful question for him in the case.

I do not think it of advantage to review the many instructions excepted to, or other alleged erroneous rulings. The questions as to the instructions do not involve the right of plaintiff to maintain the action, but minor matters, as to the degree of care required, and points of like character. Counsel agree upon what the instructions should have been, but differ in their understanding of what was given. Probably upon another trial such supposed defects will be obviated.

The order is reversed and a new trial ordered.

Henshaw, J., and McFarland, J., concurred.

Hearing in Bank denied.