(December 7, 1908.)

CARL ANDERSON, Respondent, v. GREAT NORTHERN RAILWAY COMPANY, a Corporation, Appellant.

[99 Pac. 91.]

ACTION FOR DAMAGES—NEGLIGENCE OF RAILWAY COMPANY—INJURY TO INFANT—MEASURE OF DAMAGES—LOSS OF SOCIETY—DUTY TO TRESPASSERS—DUTY TO CHILD OF TENDER AGE—DEGREE OF CARE TO PREVENT INJURY—ORDINARY CARE RELATIVE TERM—STATEMENTS AS PART OF RES GESTAE—CONTRIBUTORY NEGLIGENCE—LAST CLEAR CHANCE.

1. In an action prosecuted by the heirs or personal representatives of one whose death has been caused by the wrongful or negligent

act of another, under the provisions of sec. 4100, Rev. Stat., it is not error for the court to instruct the jury that in considering the amount of pecuniary damages sustained by the plaintiff, they may take into consideration ''the degree of intimacy existing between the father and the child and the loss of companionship if such be shown.''

2. ID.—In such case it is not error for the court to refuse to strike from the complaint the words ''welfare, comfort and happiness'' where it is alleged that they are elements entering into the pecuniary damage sustained by the plaintiff.

3. Under the provisions of sec. 4100, the jury is authorized to assess such pecuniary damages ''as under all the circumstances of the case may be just,'' and in such case they are not limited to a precise and specific pecuniary amount measured by the direct evidence given in the case, but are at liberty to take into consideration, guided by the evidence given in the case, the intrinsic probabilities that damages have been sustained by and on account of the loss of bodily care or intellectual culture or moral training which the parent of the deceased had previously supplied or bestowed.

4. A railroad company is bound to exercise a higher degree of care and watchfulness for the detection of trespassers on its track and the prevention of injury to them at points upon its track where people may be expected on the track, or where the roadbed is used constantly by pedestrians, than it is required to observe with reference to trespassers generally or at other places and under different circumstances.

5. In an action for damages caused by the negligent conduct of a railroad company running over and killing plaintiff's four-year-old child, it was not error to admit evidence which tended to establish the fact of the existence of a trail along or across the road at or near the place where the accident occurred.

6. ID.—In such a case it is not error for the court to instruct the jury that notwithstanding ''the parent may have been guilty of negligence, yet such fact does not relieve the defendant from using reasonable and ordinary care to avoid injuring the child, and the defendant is bound to use and exercise such care, and if the plaintiff's child be in a position of danger, it must be the highest and greatest care, and a failure to exercise such care under these circumstances where it may reasonably be inferred that an injury will follow as a result of such failure, amounts to wanton and reckless conduct.'' Such instruction must be construed in connection with another instruction telling them that this special duty arose on discovery of the child or reasonable opportunity of its discovery.

7. The terms ''ordinary care,'' ''utmost care'' and ''highest degree of care'' are relative terms having no fixed and unvarying

significance, but are applicable solely to the circumstances and state of facts to which they are applied. What would amount to "ordinary care" in one case would be negligence in another case, and what would be the "highest and utmost care" in one case, would amount only to "ordinary care" in another. In a case where the employees of a railway company operating its locomotive see a child of tender years upon its track in front of the train, "ordinary care," under such circumstances, is the highest and greatest degree of care that one can exercise in order to avoid injury to such child, and is such only as a reasonably prudent man would exercise under such circumstances.

8. A child four years old is not guilty of contributory negligence in going upon a railroad track, and when an engineer sees such a child unattended on the track in front of his engine, he cannot indulge any presumption whatever that the child will remove from the track before he reaches it. It becomes his duty, under such circumstances, to take immediate action to control his train so that he may stop it before reaching the child if it is possible to do so, and thereby avoid injuring or killing it.

9. In a case where a child four years old was struck and killed by a moving train, and the train did not stop until it had passed about 320 feet beyond the point where it struck the child, and the engineer upon stopping the train went back to where the body lay and there made a statement as to having seen the child and what he thought with reference to its actions or movements, and such statement was made within two or three minutes after the injury was inflicted, such statement is a part of the *res gestae* and is properly admitted in evidence.

10. Evidence in this case examined and *held,* that there is such a substantial conflict that the appellate court will not disturb the verdict.

11. In an action for damages for the death of a minor child, where contributory negligence is charged by the defendant, if the negligence of the plaintiff preceded the negligence of the defendant, and the accident might have been prevented by the exercise of ordinary care on the part of the defendant, notwithstanding plaintiff's negligence, then, and in that case, the defendant is bound to exercise such care, and a failure to do so is actionable.

(Syllabus by the court.)

APPEAL from the District Court of the First Judicial District for Bonner County. Hon. W. W. Woods, Judge.

Action by the plaintiff for the recovery of damages caused by the defendant in carelessly and negligently running its railway train over plaintiff's minor child and thereby caus-

ing its death. Judgment for plaintiff and defendant appealed. *Affirmed.*

M. J. Gordon and Herman H. Taylor, for Appellant.

Neither the loss of the companionship of the child, nor the damage suffered by plaintiff in his happiness, is anything more than the infliction of mental anguish, nor more than the loss of the society of the child, neither of which is an element of damage. (*Hillebrand v. Standard Biscuit Co.*, 139 Cal. 233, 73 Pac. 163; *Southern Ind. Ry. v. Moore*, 34 Ind. App. 154, 72 N. E. 479; *Webb v. Denver R. & G. Ry.*, 7 Utah, 17, 24 Pac. 616; *Galveston v. Barbour*, 62 Tex. 172, 50 Am. Rep. 519; *Wales v. Pacific El. M. Co.*, 130 Cal. 521, 62 Pac. 933; *Pepper v. Southern Pacific Ry.*, 105 Cal. 389, 38 Pac. 974; *Holt v. Spokane etc. Ry.*, 3 Ida. 703, 35 Pac. 39; *Potter v. Chicago etc. R. Co.*, 21 Wis. 372, 94 Am. Dec. 548; *Hedrick v. Ilwaco R. & N. Co.*, 4 Wash. 400, 30 Pac. 714, 54 Am. & Eng. R. R. Cas. 45; 8 Am. & Eng. Ency. of Law, 2d ed., 919; 13 Cyc. 371; Tiffany on Death by Wrongful Act, sec. 158; *Lange v. Schoettler*, 115 Cal. 388, 47 Pac. 139.)

The care required in the case of the licensee calls for both reasonable lookout in advance and a reasonable effort to avoid injury after presence is discovered; while with reference to a trespasser, the only duty required is that after such discovery is made the trespasser shall not be wilfully or wantonly injured. (*McConkey v. Oregon Ry. & Nav. Co.*, 35 Wash. 55, 76 Pac. 526; *Curtis v. Oregon Ry. Co.*, 36 Wash. 55, 78 Pac. 133; *Thomas v. Chicago etc. Ry. Co.*, 93 Iowa, 248, 61 N. W. 967; 3 Elliott on Railroads, sec. 1253-1255; 2 Woods on Railroads, sec. 320.)

The statement alleged to have been made by the engineer was not under the circumstances a part of the *res gestae* (giving authorities cited in opinion).

The evidence establishes the fact that the want of ordinary care on the part of the plaintiff in this action contributed to and was the proximate cause of the accident. It appears that the parents of this child permitted it to wander from home without any care on their part for its future welfare and

safety. If they failed to use ordinary care, they cannot re-cover for the loss of such child. (*Philadelphia etc. R. Co. v. Hummell*, 44 Pa. 375, 84 Am. Dec. 457; *Philadelphia etc. R. Co. v. Long*, 75 Pa. 257; *Gillespie v. McGowan*, 100 Pa. 144, 45 Am. Rep. 365; *Vinnette v. Northern Pacific R. Co.*, 47 Wash. 320, 91 Pac. 975; 1 Thompson on Neg., sec. 333; *Evansville etc. Ry. Co. v. Wolf*, 59 Ind. 89; *Senn v. Southern Ry. Co.*, 124 Mo. 621, 28 S. W. 66.)

B. S. Bennett, and Peter Johnson, for Respondent.

The degree of intimacy and loss of companionship between the plaintiff and the child, or wife, as the case may be, may be shown as affecting pecuniary loss. (*Holt v. Spokane & D. Ry. Co.*, 3 Ida. 103, 35 Pac. 39, following the case of *Beeson v. Green Mountain etc. Min. Co.*, 57 Cal. 20, and sus-tained in *Munro v. Pacific Rec. Co.*, 84 Cal. 515, 18 Am. St. Rep. 248, 24 Pac. 303; *Morgan v. Southern Pacific R. Co.*, 95 Cal. 510, 29 Am. St. Rep. 143, 30 Pac. 603, 17 L. R. A. 71; *Pepper v. Southern Pac. Ry.*, 105 Cal. 389, 38 Pac. 974; *Quill v. Southern Pac. Ry. Co.*, 140 Cal. 268, 73 Pac. 991; *Dyas v. Southern Pac. Ry.*, 140 Cal. 296, 73 Pac. 972; *Ruppel v. United Railroads*, 1 Cal. App. 666, 82 Pac. 1073; *Evarts v. Santa Barbara Ry. Co.*, 3 Cal. App. 712, 86 Pac. 830.)

"The word 'pecuniary,' in connection with the loss a person sustains by the death of a parent or child, is not construed in any very strict sense, and the tendency is to still greater liberality, and to include every element of injury that may be deemed to have a pecuniary value, though its value may not be susceptible of positive proof, and can only be vaguely estimated." (*Tilley v. Hudson Riv. R. Co.*, 29 N. Y. 252, 287, 86 Am. Dec. 297; *Ihl v. Forty-second St. etc. Ferry Co.*, 47 N. Y. 317, 7 Am. Rep. 450; *Webb v. Denver etc. Ry. Co.*, 7 Utah, 17, 24 Pac. 616, and other cases cited in Vol. 6, Words and Phrases, 5258.)

Where the track or grounds of a railroad are used to a considerable extent by pedestrians, and the company has actual or implied knowledge of such fact, the railroad owes a special duty to such licensee in operating their road at such

point by maintaining a lookout upon its engines and trains, and by giving audible signals on approaching such places. (2 Thompson on Neg., 1724; *Johnson v. Lake Sup. Ry. Co.*, 86 Wis. 64, 56 N. W. 161; *Clampit v. Chicago etc. R. Co.*, 84 Iowa, 71, 50 N. W. 673; *Davis v. Chicago & R. Co.*, 58 Wis. 646, 46 Am. Rep. 667, 17 N. W. 406; *Townley v. Chicago etc. R.*, 53 Wis. 626, 11 N. W. 55.)

"At such places the railway company is bound to anticipate the presence of persons upon the track, to keep a reasonable lookout for them." (*Cassida v. Oregon & R. Co.*, 14 Or. 551, 13 Pac. 438; *Campbell v. Kansas City & R. Co.*, 55 Kan. 536, 40 Pac. 998; *Whalen v. Chicago & R. Co.*, 75 Wis. 654, 44 N. W. 849.)

"In dangerous situations ordinary care means great care. The greater the danger, the greater care required, and the want of the degree of care required may amount to culpable negligence." (*Farrell v. Waterbury*, 60 Conn. 239, 21 Atl. 675, 22 Atl. 544; *Diamond v. North. Pac. Ry.*, 6 Mont. 580, 13 Pac. 367, 371; *Brown v. Lynn*, 31 Pa. 510, 72 Am. Dec. 768; *Young v. Citizens' St. R. Co.*, 148 Ind. 54, 44 N. E. 927, 47 N. E. 142; *Citizens' R. Co. v. Gifford*, 19 Tex. Civ. App. 631, 47 S. W. 1041; *Grand Trunk Ry. v. Ives*, 144 U. S. 408, 12 Sup. Ct. 679, 36 L. ed. 485.)

When the trespasser upon the railway track is a child of tender years, the company is bound to exercise a higher degree of care and caution to avoid injuring it than in case of an adult. (2 Thomp. Neg., 1806, et seq.; *Esrey v. South Pac.*, 103 Cal. 541, 37 Pac. 500.)

The statement of the engineer was a part of the *res gestae*, and therefore admissible (giving authorities cited in opinion).

"Where the negligence of plaintiff precedes the negligence of the defendant, and the accident might have been prevented by the exercise of ordinary care on the part of the defendant, then the defendant is bound to exercise such care." (*Esrey v. South Pac.*, 103 Cal. 541, 37 Pac. 500; Shearman & Red. Neg., sec. 99; Cooley on Torts, p. 674; . *Romick v. Chicago etc. R. R. Co.*, 62 Iowa, 167, 17 N. W. 458; *Robinson v. Western Pacific Ry. Co.*, 48 Cal. 423.)

AILSHIE, C. J.—This action was prosecuted by the respondent, Carl Anderson, to recover damages from the appellant railway company, for causing the death of his minor child, Elsie Anderson, aged four years. The trial resulted in a verdict in favor of the plaintiff for the sum of $2,000. The defendant moved for a new trial and appealed from the judgment and order denying its motion. A great number of errors have been assigned, but they have been grouped by appellant under four general heads, and we shall consider and deal with them in the same manner. The gist of the complaint made by appellant in its first group of errors, comprising Nos. 1, 2, 8, 11, 14 and 15, goes to the elements of damage proper to be considered by the jury in assessing damages in the event they should find for the plaintiff. The court gave plaintiff's requested instructions Nos. 13 and 14, which are as follows:

"XIII. You are further instructed that if you find for the plaintiff, you may give him as damages such sum, as under all circumstances of the case may be just, not exceeding Two Thousand Dollars.

"XIV. In determining the amount you may take into consideration the age, health and intelligence of the child, the degree of intimacy existing between the father and the child and the loss of companionship if such be shown, together with what expenses may have been incurred as shown by the evidence, by the father for the funeral and medical expenses."

The particular portion of these instructions to which appellant objects is that part of instruction No. 14 wherein the court told the jury that in considering damages they might take into consideration "the degree of intimacy existing between the father and the child and the loss of companionship if such be shown."

The complaint, among other things, charged that on and prior to April 13, 1907, plaintiff was a married man and the head of a family, and that his infant daughter, named Elsie, then four years old, was living with him at his home, and that she "always had been a strong, healthy child, bright, smart and intelligent in all ways, and a great comfort to

plaintiff, and capable of earning for plaintiff before its maturity large sums of money, and thus adding to the wealth, welfare, comfort and happiness of plaintiff." The defendant moved to strike from the complaint the words "welfare, comfort and happiness," and also the words "and the companionship of said child."

In support of appellant's motion to strike from the complaint the foregoing language, and also its objections to instruction No. 14, counsel cite a long list of authorities, the leading ones of which are as follows: *Holt v. Spokane & P. Ry. Co.,* 3 Ida. 703, 35 Pac. 39; 13 Cyc. 371; 8 Am. & Eng. Ency. of Law, 2d ed., 919; *Webb v. Denver R. & G. Ry. Co.,* 7 Utah, 17, 24 Pac. 616; *Wales v. Pacific Electric Motor Co.,* 130 Cal. 521, 62 Pac. 933; *Hendrick v. Ilwaco R. & Nav. Co.,* 4 Wash. 400, 30 Pac. 714; 54 Am. & Eng. R. R. Cas. 45; *Pepper v. Southern Pac. Ry. Co.,* 105 Cal. 389, 38 Pac. 974; *Hillebrand v. Standard Biscuit Co.,* 139 Cal. 233, 73 Pac. 163; *Atchison T. & S. F. Ry. v. Townsend,* 71 Kan. 524, 81 Pac. 205; *Southern Ind. Ry. v. Moore,* 34 Ind. App. 154, 72 N. E. 479; *Central Georgia Ry. Co. v. Alexander,* 144 Ala. 257, 40 South. 424; *Ohio & Miss. R. Co. v. Tindall,* 13 Ind. 366, 74 Am. Dec. 259; *Galveston v. Barbour,* 62 Tex. 172, 50 Am. Rep. 519; *International & G. N. Ry. Co. v. Glover* (Tex. Civ. App.), 88 S. W. 515.

Respondent cites *Beeson v. Green Mountain G. M. Co.,* 57 Cal. 20, among other cases, as authority in support of the instructions given by the court in this case. In the Beeson case, the court instructed the jury on the question of damages as follows: "In determining the amount of such damages, you have the right to take into consideration the pecuniary loss, if any, suffered by this plaintiff in the death of said George Beeson, by being deprived of his support; also the relations proved as existing between plaintiff and deceased at the time of his death, and the injury, if any, sustained by her in the loss of his society."

The supreme court of California approved this instruction and affirmed a judgment in favor of the plaintiff.

This court, in the case of *Holt v. Spokane & P. Ry. Co.,* 3 Ida. 703, 35 Pac. 39, cited and approved the Beeson case,

and held that the loss of a child's society was a proper element of damages, providing there was any proof on the subject, but that it could not be considered without allegations and proof to that effect.

Appellant insists that the doctrine announced in the Beeson case has been repudiated and overruled by the California court in the subsequent cases of *Pepper v. Southern Pac. Ry. Co., supra,* and *Wales v. Pacific Electric Power Co., supra.* Appellant's contention is clearly not supported by the authorities. The Beeson case has been uniformly cited and approved by the California court on the point under consideration. In *Dyas v. Southern Pac. Ry.,* 140 Cal. 296, 73 Pac. 975, the court cited and approved the Beeson case, and approved an instruction to the same effect as had been given in the leading case. The doctrine of the original case was again announced and approved in *Ruppel v. United Railroads of San Francisco,* 1 Cal. App. 666, 82 Pac. 1073, and again in *Evarts v. Santa Barbara Co.,* 3 Cal. App. 712, 86 Pac. 830. The same rule was announced and the Dyas case was cited and approved.

In *Munro v. Pac. Coast Dredging R. Co.,* 84 Cal. 515, 18 Am. St. Rep. 248, 24 Pac. 303, the supreme court of California appears to have made a distinction between an instruction authorizing the consideration of sorrow, grief and mental suffering caused by the death of a son, from an instruction authorizing the consideration of the loss of comfort and society. The court allowed an instruction on the latter subject and disallowed it as to the former. The opinion says:

"We are of the opinion that the court erred in including in the instructions the words 'sorrow, grief, and mental suffering occasioned by the death of the son to his mother.' In thus directing the jury, the court fell into error. In our opinion, the damage should be confined to the pecuniary loss suffered by the mother, and the loss of the comfort, society, support and protection of deceased."

The Munro case was cited and approved in *Morgan v. Southern Pac. Co.,* 95 Cal. 510, 29 Am. St. Rep. 143, 30 Pac. 603, 17 L. R. A. 71, and the judgment in the latter case was reversed on account of the trial court having instructed the

jury that they were "not limited by the actual pecuniary injury sustained by her (the plaintiff) by reason of the death of her child." The court said:

"Nothing can be recovered as a *solatium* for wounded feelings. The authorities outside of this state are almost unanimous to the point above stated."

Sec. 4100 of the Rev. Stat. of this state is the same as sec. 377 of the Code of Civil Procedure of California, which authorizes the recovery of damages by the heirs or personal representatives of one whose death has been caused by the wrongful or negligent act of another. In considering that part of the statute which authorizes the recovery of such damages "as under all the circumstances of the case may be just," the supreme court of California in *Ruppel v. United Railroads of San Francisco, supra,* said:

"But pecuniary interest does not mean a precise sum in money measured and demonstrated by evidence. The language of our statute does not so limit it because it allows such damages as under 'all the circumstances of the case may be just.'" The court quotes with approval from *Tilley v. Hudson River R. Co.,* 29 N. Y. 257, 86 Am. Dec. 297, as follows:

"A liberal scope was designedly left for the action of the jury. They are to give such damages as they shall deem a fair and just compensation with reference to the pecuniary injury resulting from such death. They are not tied down to any precise rule. Within the limit of the statute as to the amount, and the species of injury sustained, the matter is to be submitted to their sound judgment and discretion. They must be satisfied that pecuniary injury resulted. If so satisfied, they are at liberty to allow them, from whatever source they actually proceeded which could produce them. If they are satisfied from the history of the family, or the intrinsic probabilities of the case, that they were sustained by the loss of bodily care or intellectual culture, or moral training which the mother had before supplied, they are at liberty to allow for it." (4 Suth. on Damages, 3d ed., sec. 1263; *Chicago & St. Louis Ry. Co. v. Woolridge,* 174 Ill. 330, 51 N. E. 701; *Webb v. Denver & R. G. Ry.,* 7 Utah, 17, 24 Pac. 616.)

From a review of the authorities and a consideration of our statute, we are satisfied the instructions under consideration were correct, and that the elements of damage the jury were authorized to consider in arriving at the pecuniary damage sustained were proper matters for their consideration. An examination of some of the California cases will also disclose that the court has made a distinction between the consideration of the loss of companionship and society as an element in arriving at the pecuniary damage and the consideration of the same thing as a separate and independent cause of damage. We simply call attention to that as a distinction that has been drawn by some courts.

Defendant's requested instruction No. 5 was to the effect that the jury "have no right to consider anything but the actual pecuniary loss the plaintiff sustained on account of the death of his child." This request was properly rejected by the court. It was too strict and narrow a limitation to have placed on the deliberations of the jury.

The next group of errors assigned is with reference to the ruling of the court in admitting evidence as to the existence of a trail along and across the track near where the accident occurred, and also in reference to an instruction requested by defendant to the effect that such evidence should not be considered by the jury. The authorities are in hopeless conflict over the duty a railroad company owes to trespassers on its track. A large number of them, and, we are inclined to admit, a majority of them, seem to hold that the company owes no duty to a trespasser found upon its track "except to do him no wilful or wanton injury." (3 Elliott on Railroads, sec. 1253; *McConkey v. Oregon R. & N. R. Co.*, 35 Wash. 56, 76 Pac. 526; *Burg v. Chicago R. I. & P. Co.*, 90 Iowa, 106, 48 Am. St. Rep. 419, 57 N. W. 680; *Norfolk & W. W. R. Co. v. Dunnaway*, 93 Va. 29, 24 S. E. 698; *Devoe v. New York etc. Ry. Co.*, 63 N. J. L. 276, 43 Atl. 899.) On the other hand, there is a large and respectable, and, we think, better considered line of authorities to the effect that without regard to the question whether the person killed or injured was or was not a trespasser or licensee upon the track of the

company, the company is bound to exercise special care and watchfulness at any point upon its track where people may be expected on the track, or where the roadbed is used constantly by pedestrians. (*Townley v. Chicago etc. R. Co.*, 53 Wis. 626, 11 N. W. 55; *Cassida v. Oregon & R. Co.*, 14 Or. 551, 13 Pac. 438; *Campbell v. Kansas City & R. Co.*, 55 Kan. 536, 40 Pac. 998; *Whalen v. Chicago & R. Co.*, 75 Wis. 654, 44 N. W. 849; *Anderson v. Chicago & R. Co.*, 87 Wis. 199, 58 N. W. 79, 23 L. R. A. 203; *Clampit v. Chicago & R. Co.*, 84 Iowa, 71, 50 N. W. 673; 2 Thompson on Negligence, sec. 1724.)

It does not appear to us as either rational, humane or consonant with a proper regard for the value and protection of human life to say that the demands of travel, commerce and transportation are so pressing and urgent as to rise superior to the safety of human life. Transportation these days is carried on at almost, if not quite, double the speed at which it was a few decades ago, and it is a well known fact to the officers, agents and employees of railroad companies that pedestrians do cross and oftentimes travel along certain portions of the track. Where such travel has been permitted by the company, and has become habitual, the company which is operating trains daily, and often hourly, over the road, becomes acquainted with and cognizant of such fact, and it ought to be held to the exercise of greater care for the protection of life at such places and under such conditions than would be required of it generally over its road at such places as it has no reason to anticipate or suspect the presence of pedestrians. The company has it in its power, in rural districts at least, to prevent the growing up of such a custom and to break it up if it has arisen, and if it does not see fit to do so, it should be held to greater care in attempting to prevent injury. It was not improper to admit the evidence which tended to establish the existence of a trail along this road. The evidence disclosed that there was a schoolhouse about a mile east of the place where the child was struck, and within a distance of from 300 to 500 ft. of the railroad track. There is a county road on the north side of the track this entire distance, varying from perhaps 100 ft. to 400 or 500 ft. dis-

tant from the track.   There is a crossing about 1000 ft. west, and also a trail crossing the track about 800 ft. east of the point where the child was found.   The evidence of the school teacher and others living in that vicinity shows that school children and others go upon the track at the point designated as "trail" on plaintiff's exhibit "A," being a map of the track and adjacent country, and they would travel down the track for something like three-quarters of a mile.   The evidence of the school teacher seems to indicate that they sometimes went upon the railroad track at the place designated as "crossing" west of the scene of the accident and would travel down the track from there to the schoolhouse.   The school teacher says:

"I have passed a great many people, sometimes as high as seven or eight at one time, just going that little distance; many times children on the railroad track; they were accustomed to walking on the railroad track."   While it is not certain from the evidence that this custom prevailed nearer than 700 or 800 ft. of the point where the child was discovered, it is clear that it did exist for at least a half or three-quarters of a mile along the track to the east of that point, and over which the train had just traveled preceding the accident.

The court instructed the jury that they "should take into consideration the place at which the accident occurred; the nature of the country surrounding; the condition of the road-bed; the manner in which the train was being propelled; the number of dwelling-houses in the vicinity; their distance from the track; and the probability of pedestrians being on the track at that time and place, if any," and from all the facts and circumstances determine whether or not the defendant's servants exercised ordinary care and prudence in the management and operation of the train at the time and place mentioned.   Defendant took no exception to this instruction. Defendant's requested instruction No. 8 was in direct conflict with the foregoing instruction, and was properly refused. The effect of it would have been to tell the jury that however long pedestrians and the public generally might have used the defendant's track or a trail along or across the same,

and however many persons might be traveling thereon, that nevertheless such facts would "impose no duty upon the defendant and its servants to exercise greater care in the management and running of its trains at such pathway than at other points along its roads where there were no established crossings." As above stated, we are not in harmony with this view of the law, and are not inclined to adopt such a doctrine in this state. It is clear to us that a stricter rule with reference to duty and obligation to trespassers ought to be enforced against public service companies and corporations handling and operating dangerous and destructive forces, substances and agencies, than is applicable to the owner of farm lands or town lots.

Appellant makes special complaint of the action of the court in giving plaintiff's requested instruction No. 6, which is as follows:

"The court instructs you that notwithstanding you may find that the child of the plaintiff was a trespasser upon the tracks of the defendant, and that the parent may have been guilty of negligence, yet such fact does not relieve the defendant from using reasonable and ordinary care to avoid injuring it, and the defendant is bound to use and exercise such care, and if the plaintiff's child be in a position of danger, it must be the highest and greatest care, and a failure to exercise such care under these circumstances where it may reasonably be inferred that the injury will follow as a result of such failure amounts to wanton and reckless conduct."

The particular objection made to this instruction is directed against the language wherein the court told the jury that if the defendant discovered plaintiff's child in a position of danger, it must thereupon exercise the highest and greatest care to prevent injury; that a failure to do so amounts to wanton and reckless conduct on the part of the defendant. This instruction is in somewhat stronger language than the courts have generally used in this connection. Immediately preceding this instruction, however, the court had given instruction No. 5, to which no objection was taken, and which is as follows:

"The court instructs you as a matter of law that a greater degree of care and caution will be required to avoid injury to an infant, that may be supposed to be incapable of caring for itself, than would be required in the same situation to avoid injury to an adult. A child is held only to the exercise of such degree of care and discretion as is reasonable to be expected from children of its age. A child of four years is presumed to be incapable of undertaking ordinarily the dangers and perils incident to the walking upon the railroad track. Children of very tender age are conclusively presumed to be incapable of exercising care and judgment to avert injury from themselves, and, as a matter of law, contributory negligence is not imputable to them."

At the instance of defendant, the court had also previously given its requests Nos. 4 and 6, which are as follows:

"IV. In determining the degree of care that the defendant should have exercised under the circumstances to guard against injury to anyone, you are instructed that 'precaution is a duty only so far as there is reason for apprehension.' and therefore if the defendant had no reason to apprehend the presence of anyone, young or old, at the place where the child was injured, and the engineer was exercising reasonable prudence and caution in the operation of his engine, and if you find that under such circumstances the accident was unavoidable after the presence of the child on the track was discovered, the plaintiff cannot recover, and your verdict should be for the defendant."

"VI. The court instructs the jury that the defendant is not liable in this case, unless its servants failed to exercise ordinary care to prevent the injury, after they became aware of the danger to which the said child was exposed; or after they might have become aware thereof by the exercise of ordinary care; and by ordinary care is meant such care as would be ordinarily used by prudent persons performing service under similar circumstances."

It will be observed, therefore, on reading the two instructions last above given that the court had told the jury, on defendant's request, that "precaution is a duty only so far as there is reason for apprehension," and that the exercise of

ordinary care to prevent injury arose only after the defendant "became aware of the danger to which the child was exposed; or after they might have become aware thereof by the exercise of ordinary care."

We think that instruction number 6, given on plaintiff's request, should be construed and understood in connection with the instructions given on defendant's request, and that the result reached would be that the defendant's servants and agents should exercise such care and diligence to prevent an injury to a child as the danger to which it was exposed would suggest to a reasonably prudent man, and that a failure to do so under such circumstances would amount to reckless and negligent conduct. The expression "ordinary care" is a relative term rather than a fixed and unvarying one. What would be "ordinary care" under one state of facts would be gross negligence under other conditions. And so what would amount to the "highest and utmost care" in one situation would only be "ordinary care" in another, and therefore when the term "ordinary care" is used we mean such care as is proportionate to the danger to be avoided or risk to be incurred, judged by the standard of common prudence and the surrounding facts and circumstances. (2 Thompson on Negligence, sec. 1812 et seq.) In a case like this, it could not affect any substantial right of the railroad company for the court to instruct the jury that the highest duty of care and diligence would be necessary, for the reason that such degree of diligence would amount to nothing more than ordinary care under such circumstances. In other words, a reasonable man would exercise the greatest and highest degree of care possible under such circumstances to save a human life.

As said by the supreme court of Wisconsin in *Heucke v. Milwaukee City Ry. Co.*, 69 Wis. 401, 34 N. W. 245: " 'The utmost care and diligence,' 'the highest degree of care and diligence,' are expressions to measure the care and diligence which a prudent man would exert in that business under like circumstances." And so we might add the term "ordinary care" in a case like this. We can conceive of no higher duty of diligence incumbent upon a railroad company to exercise,

except the one it owes to its passengers, than that of protecting an infant found on its track from injury or death. When an engineer sees an adult on the track ahead of him, he ordinarily has a right to presume that he will get off the track before the train reaches him; but not so when he sees a child of tender years on the track. There is no presumption that it will move from the track. (2 Thomp. Neg., sec. 1737; *St. Louis & R. Co. v. Christian,* 8 Tex. Civ. App. 246, 27 S. W. 932; *Indianapolis etc. R. Co. v. Pitzer,* 109 Ind. 179, 58 Am. Rep. 387, 6 N. E. 310, 10 N. E. 70; *Bottoms v. Seaboard & R. Co.,* 114 N. C. 699, 41 Am. St. Rep. 799, 19 S. E. 730, 25 L. R. A. 784; 3 Elliott on Railroads, secs. 1257a, 1261; *Walters v. Chicago R. I. & P. R. Co.,* 41 Iowa, 75; 2 Blashfield on Instructions, p. 899. See note to *Union Pacific R. Co. v. Cappier,* 66 Kan. 649, 72 Pac. 281, 69 L. R. A. 513.) We conceive it to be the duty of an engineer on a railway locomotive, when he discovers a child of the age of four years on the track ahead of him, to take immediate action to control his train so that he may stop it before reaching the child, and thereby save injuring or killing it in the event it does not remove from the track before he reaches it. In our opinion, when he fails to do that, he fails to act as a reasonably prudent man would act under such circumstances, and if he wounds or kills the child, his company is properly chargeable with reckless and wanton conduct. (2 Thomp. Neg., sec. 1812; *Heucke v. Milwaukee City Ry. Co.,* 69 Wis. 401, 34 N. W. 245.)

The next assignments of error have reference to the ruling of the court in admitting the evidence of the witness Manley. This witness was a passenger on the defendant's train at the time of the accident, and was in the last coach. He testified that the back end of the train had passed the child about 320 feet before it stopped; that immediately on the train stopping he jumped off and ran back where the child was. He says that the train backed up and he heard a man, whom he took to be the engineer, say while the child was lying on the ground and before it had been picked up or removed from the place to which it had been thrown, ''I saw the little girl

walking at the end of the ties.'' The witness says this was in answer to a question someone had asked the engineer. The witness was later recalled to the stand and testified that the engineer made the further statement: ''I thought she would get off from the track.'' Counsel for defendant objected to this evidence on the ground that it was a statement subsequent to the occurrence and was not a part of the *res gestae,* and was not binding upon the defendant company. In support of this contention counsel cite the following cases: *Ohio & Miss. Ry. Co. v. Stein,* 133 Ind. 243, 31 N. E. 180, 32 N. E. 831, 19 L. R. A. 733; *Hopkins v. Boyd,* 18 Ind. App. 63, 47 N. E. 480; *Waldele v. New York C. & H. Ry.,* 95 N. Y. 274, 47 Am. Rep. 41; *Savannah etc. Ry. Co. v. Holland,* 82 Ga. 257, 14 Am. St. Rep. 158, 10 S. E. 200; *Sorenson v. Dundas,* 42 Wis. 642; Jones on Ev., secs. 348-360; *Sullivan v. Oregon R. & N. Co.,* 12 Or. 392, 53 Am. Rep. 364, 7 Pac. 508; *Gordon v. Grand Rapids & I. Ry. Co.,* 103 Mich. 379, 61 N. W. 549; *Boone v. Oakland Transit Co.,* 139 Cal. 490, 73 Pac. 243; *Lissak v. Crocker Estate,* 119 Cal. 442, 51 Pac. 688; *Beasley v. San Jose F. P. Co.,* 92 Cal. 388, 28 Pac. 485; *Adams v. Hannibal & St. Joe Ry. Co.,* 74 Mo. 553, 41 Am. Rep. 333; *Tennis v. Rapid-Transit etc. Co.,* 45 Kan. 503, 25 Pac. 876; *Durkee v. Central Pac. R. Co.,* 69 Cal. 533, 58 Am. Rep. 562, 11 Pac. 130; *Weideman v. Tacoma Ry. Co.,* 7 Wash. 517, 35 Pac. 414; *Dodge v. Childs,* 38 Kan. 526, 16 Pac. 815; *Edmunds v. Curtiss,* 8 Colo. 605, 9 Pac. 793; *Patterson v. Wabash, St. L. & P. Ry. Co.,* 54 Mich. 91, 19 N. W. 761; *Alabama G. S. R. Co. v. Hawk,* 72 Ala. 112, 47 Am. Rep. 403; *Holt v. Spokane & P. Ry. Co.,* 3 Ida. 703, 35 Pac. 39; *People v. Dewey,* 2 Ida. 83, 6 Pac. 103; *State v. Daugherty,* 17 Nev. 376, 30 Pac. 1074; *T. & H. Pueblo Bldg. Co. v. Klein,* 5 Colo. App. 348, 38 Pac. 608; *Silveira v. Iverson,* 128 Cal. 187, 60 Pac. 687; *Vicksburg & M. R. Co. v. O'Brien,* 119 U. S. 99, 7 Sup. Ct. 118, 30 L. ed. 299; *Williams v. Southern Pac. Ry. Co.,* 133 Cal. 550, 65 Pac. 1100; *State v. Taylor,* 7 Ida. 134, 61 Pac. 288; *Luman v. Golden Anc. Channel M. Co.,* 140 Cal. 700, 74 Pac. 307; *Birch v. Hale,* 99 Cal. 299, 33 Pac. 1088; *Atchison T. & S. F. Ry. v. Logan,* 65 Kan. 748, 70 Pac. 878.

Counsel for the respondent insist, on the other hand, that this statement was a part of the *res gestae,* and as such was admissible, and in support thereof cites the following cases: *Coffin v. Bradbury,* 3 Ida. 770, 95 Am. St. Rep. 37, 35 Pac. 715; *Missouri, K. & T. R. Co. v. Vance* (Tex. Civ.), 41 S. W. 167; 6 Thompson on Negligence, secs. 7732, 7742; *Rothrock v. City of Cedar Rapids,* 128 Iowa, 252, 103 N. W. 475; *Roberts v. Port Blakely M. Co.,* 30 Wash. 25, 70 Pac. 111; Elliott on Evidence, sec. 565; *New York etc. Mining Syndicate v. Rogers,* 11 Colo. 6, 7 Am. St. Rep. 198, 16 Pac. 719; *Alsever v. Minneapolis & St. P. R.,* 115 Iowa, 338, 88 N. W. 841, 56 L. R. A. 748; *Zoesch v. Flambeau Paper Co.,* 134 Wis. 270, 114 N. W. 485; *State v. Alton* (Minn.), 117 N. W. 617; *Christopherson v. Chicago M. & St. P.,* 135 Iowa, 409, 109 N. W. 1077; *Driscoll v. People,* 47 Mich. 413, 11 N. W. 221; *Johnson v. State,* 8 Wyo. 494, 58 Pac. 761; *Freeman v. State,* 40 Tex. Cr. 545, 46 S. W. 641, 51 S. W. 230; *Stagner v. State,* 9 Tex. App. 440; *Hermes v. Chicago Elec. Ry.,* 80 Wis. 590, 27 Am. St. Rep. 69, 50 N. W. 584.

We think the correct rule applicable under the circumstances of this case is stated in *Hyvonen v. Hector Iron Co.,* 103 Minn. 331, 123 Am. St. Rep. 332, 115 N. W. 167, wherein the court was considering a statement or declaration made some twenty or twenty-five minutes after the accident. The court said:

"The declaration was so closely connected with the transaction that it was competent evidence in the nature of an admission, whether it be treated as a spontaneous exclamation (4 Wigmore Ev., 1745-1757), or whether it be considered as an admission by an agent while engaged in the course of his employment. Statements of this character by employees or agents intrusted with important duties with respect to machinery, or in the control of railway trains, have been received in evidence when made under such circumstances and at such a time as to indicate that they are entitled to credit. The rule has become so well settled with reference to this particular class of cases that no additional light can be thrown on the subject by attempting to discuss it here, or to deter-

mine under what particular head or rule of evidence such declarations are admissible.''

Under this rule we think the evidence of the witness Manley was admissible. His statement was made within at least a couple of minutes after the occurrence, and there is nothing surrounding his making the statement that would tend to show that it was colored or not a fair representation of his true state of mind at the time he saw the child.

The remaining assignments of error go to the sufficiency of the evidence to sustain the verdict and judgment. It is the contention of the appellant that the evidence shows its engineer and employees exercised due diligence and care, and that it was impossible to prevent the injury to this child after the engineer discovered it upon the track. It is also contended that the parents of the child were guilty of contributory negligence sufficient to prevent a recovery in this case. It appears from the evidence that the train had left Sandpoint about eight or ten minutes behind schedule time; that the train was running at a rate of from 40 to 45 miles an hour at the time the child was discovered on the track. It is also shown that the track was on a curve up to within 380 ft. of the point where the child was struck. It was proven by a civil engineer and other witnesses that the point at which the child was struck was visible from the track as far back as 1321 ft.; in other words, that the engineer could have seen this child at least 1321 ft. before reaching it. Defendant produced witnesses who said it was impossible to see the child at that distance. The defendant's engineer and brakeman testified both as to what actually occurred and as to the usual and customary practice in such cases, and the plaintiff produced a locomotive engineer who had been in the employ of the Northern Pacific Ry. Co., who also gave expert testimony as to the use of air-brakes and the necessary appliances for stopping the train, and also the manner of maintaining a lookout and the distance in which a train could probably be stopped when running at the speed this train was running. On most of these questions there was a conflict of evidence. It is clear to us that the engineer could not have seen the child at the distance 1321 ft. on this track, it being on a curve,

if he kept his eye constantly on the track in advance of his engine, because the line of vision would have extended far to the left of the point where the child was situated rather than upon the track at that point. It would also have been difficult to determine in rounding the curve whether the object was on the track or to one side. On the other hand, it is difficult to understand how an object the size of a four year old child would not have been observed in the sweep of vision to one maintaining a lookout on the engine as the engineer says he was doing. It was a clear day and the sun was shining at the time. Mrs. McCoy and her daughter were in the McCoy orchard 1050 ft. northwest of the point of the accident and heard the whistle blow the danger signal. They saw the child on the track walking slowly westward, and could recognize that it was a child. They saw the engine strike it and throw it off the track. The plaintiff's expert testified that an engineer would generally keep his eye on the track at a distance from three hundred to four hundred ft. in front of the engine, but that he would occasionally lift his eye and scan the track as far ahead as he could see. Defendant's engineer testified that he was about five hundred ft. from where the child was struck when he first noticed any indication of an object; that he could not distinguish what the object was, and did not know what it was; that it did not appear to move; that he thought it was a caution flag by the side of the track; that he did not discover that it was a child until he was within about three hundred ft. of it and that it was impossible to stop the train that distance. He says that he immediately set the brakes and blew the whistle; that he had been making a service application of the brakes in rounding the curve, and that it was consequently impossible to stop as quickly as he could have had he not been making such application. At least two persons, however, testified that the train did not begin to slow up until after it passed the body of the child. These witnesses say the whistle blew the danger signal before the train came to the child, but that the train did not begin to slow up until after it had passed it. The engineer, on the other hand, says he applied the brakes first and then blew the whistle. There is one thing in the

evidence of the engineer that we are unable to understand, and that is his evidence wherein he testified that he could not recognize this object as being a child or human being at a distance of five hundred ft. away. It must be assumed that this engineer either possessed clear and accurate vision, or else his company was guilty of negligence in employing an engineer who did not possess such vision. If his sight was clear and accurate, as should be the case with one occupying such a position, it is exceedingly strange that he could not distinguish a four year old child on the track at a distance of five hundred ft. away. As above stated, others could distinguish a distance of more than 1000 ft. It is claimed that he might have seen the point where the child was struck at a distance of 1321 ft. before reaching it. As to whether he was guilty of negligence in not discovering it until he was within three hundred ft. of it was a proper question to go to the jury. They evidently concluded that he was guilty of negligence in not discovering the child sooner and in time to stop his train before killing it. We think the evidence was sufficient to go to the jury on the question of negligence.

On the question of contributory negligence on the part of the parents, the rule has been announced in this state in *Pilmer v. Boise Traction Co.,* 14 Ida. 327, 94 Pac. 432, that ''although the action of the one injured may have been the primary cause of the injury, yet an action for such injury may be maintained if it be shown that the defendant might, by the exercise of reasonable care and diligence, have avoided the consequences of the injured party's negligence.'' This was said with reference to the duties of a street-car company, but the principle is equally as applicable here. The railway company has no right to kill a person where it can avoid doing so, simply because he has committed an act of negligence in the first place. Where the negligence of the plaintiff precedes the negligence of the defendant, and the accident might have been prevented by the exercise of ordinary care on the part of the defendant, notwithstanding plaintiff's negligence, then, and in that case, the defendant is bound to exercise such care, and a failure to do so is actionable. (*Esrey v. Southern Pac. Ry. Co.,* 103 Cal. 541, 37 Pac. 500; *Holmes v. South*

*Pacific Coast Ry. Co.*, 97 Cal. 161, 31 Pac. 834; also cases cited in *Pilmer v. Boise Traction Co., supra.*)

The judgment should be affirmed, and it is so ordered. Costs in favor of respondent.

Sullivan and Stewart, JJ., concur.